THE WORMSER-GOODMAN CONSTRUCTION COMPANY AND
G. EVERETT HILL, PROSECUTORS, v. THE BOROUGH
OF BELMAR.

### Decided August 29, 1910.

1. Where a borough has entered into a contract for the erection of
   a sewage disposal plant, in pursuance of an ordinance passed for
   that purpose, and has subsequently passed ordinances providing
   for the construction of a sewage disposal plant of a different kind
   and under different plans and repealing all inconsistent ordinances
   —*Held*, that the original contractors, not being residents or tax-
   payers of the borough, should not be allowed a writ of *certiorari*
   to set aside the later ordinances because they have the effect to
   abrogate the contract and are vicious because alleged to infringe
   upon the principle contained in the federal and state constitu-
   tions prohibiting the passage of any law impairing the obligation
   of a contract. *Const. U. S.*, art. 1, § 10; *Const. N. J.*, art. 4, § 7,
   ¶ 3.
2. The supplement to the Borough act (*Pamph. L.* 1910, *p.* 362),
   which deals with "the construction or purchase of a drainage or
   sewerage system including disposal plant" and not with the erec-
   tion of a disposal plant, has not the effect of requiring the propo-
   sition to install a disposal plant to be used in connection with a
   pre-established and existing sewer system, to be first submitted to
   popular vote.

On rule to show cause why a writ of *certiorari* should not
be allowed.

For the rule, *Boyd McLean.*

*Contra, Johnston & Conover.*

The opinion of the court was delivered by

VOORHEES, J. This is a rule to show cause why a *certiorari*
should not be allowed to review the passage of two ordinances
by the borough council, one on June 21st, 1910, and the other
on July 5th, 1910.

The controversy arises out of the efforts on the part of ·the
borough to erect a sewage disposal plant or septic tank. The

borough had been at first urged to institute this work and then threatened with the prosecution by the state board of health for the pollution of the ocean by allowing the waste from the borough to be emptied into the ocean for lack of a proper disposal plant. Before the passage of the ordinances in question, another or other ordinances had been passed whereby certain plans for the construction of a disposal plant had been prepared by Mr. Hill, one of the prosecutors, and accepted by the borough. These plans referred to in the earlier ordinances as the plans of the "City Waste Disposal Company," involved the pumping of the sewage.

The construction company had then submitted a bid founded upon these plans for the erection of the plant which it claims had been accepted and a contract concluded between it and the borough, by reason of the fact that a committee of the borough had recommended the acceptance of a submitted contract upon the bid of the construction company, provided certain modifications of it were made regarding the time when the work under it should begin.

The construction company claims that when it was notified of this modified acceptance, it immediately submitted a contract to the borough embodying the change suggested, together with a bond for the faithful performance of the contract. The borough denies this, and says that no contract was actually concluded, hence the existence of a contract between the company and the borough is in dispute.

After the proceedings had reached this point, the borough alleges that it ascertained that pumping stations of the character of the one proposed by the Hill plans had been unsuccessful at other places along the shore, emitting noxious odors and becoming in other ways nuisances; that the lot selected by Hill for the location of the proposed station was not available to the borough; the title thereof being in dispute, and for these, and perhaps additional reasons, the borough concluded not to proceed under the Hill plans, but to erect a different plant, eliminating the pumping feature under plans prepared by another man, and thereupon adopted the ordinances under review.

The ordinance of June 21st, 1910, recites the passage of the ordinance of August 17th, 1909, authorizing the construction of a sewage disposal plant and system for use in connection with the present sewer system under the plans of the City Waste Disposal Company and the making of contracts therefor; that that ordinance was passed under the belief that the land designated in the plans for the location of the pumping station could be obtained by the borough, but that litigation for that purpose had been decided adversely to the borough, and whereas after investigation, it appeared that a disposal plant could be established without a pumping station and at less cost, and that the state board of health had approved such change, acceding to plans designed by Clyde Potts, proceeds to amend the ordinance of August 17th, 1909, by substitution of the Potts' plans for the Hill plans, and the repeal of all inconsistent ordinances. The ordinance of July 5th, 1910, is to the same effect, except that it is in form an original enactment and not an amendment.

The borough then advertised for bids, under the Potts' plans, received a bid from one Hellman, which was the lowest bid, effecting a saving to the borough on the previous scheme of construction of several thousand dollars, and thereupon the borough by resolution withdrew from any negotiations or contracts which had previously existed between it and Hill and the construction company.

Meanwhile, the construction company, on the modified plans, had submitted a bid which, however, was not the lowest, Hellman being still lower. Before negotiating or concluding with Hellman, the borough endeavored to induce the construction company to take the modified contract at the same figure that Hellman had agreed to, having first obtained Hellman's consent thereto; this the construction company refused to do.

It is to be here remarked, however, that in submitting their bid on the new plans, the construction company did it with a reservation that it should not interfere with any rights which it had then acquired by reason of its bid and submitted contract with the borough upon the Hill plans or any rights

accruing to it therefrom. The rule granted restrained the borough from entering into any contract upon the bids received.

It will be noticed that two prosecutors have joined, Hill and the construction company. It may be doubtful whether this may be done. But for the purpose of the case, it may be assumed that such joinder is not objectionable.

It must also be observed that neither Hill nor the construction company are taxpayers or residents of the borough, and therefore their standing to prosecute must rest entirely upon the fact that they are holders of contracts with the borough which have been abrogated by the borough, by means of the passage of the ordinances under review, and therefore have rights which are taken away or interfered with adversely by the ordinances.

For the purposes then of this case, it may be assumed, without deciding, that contracts are held by each of the prosecutors with the borough which the borough has on its part refused to perform or permit the prosecutors to perform either directly or by necessary implication by the passage of the ordinances. Just here it must be further remarked that upon the refusal of the construction company to take the modified contract at the same bid as Hellman, the borough, although restrained from actually entering into a contract with Hellman, yet holds the bid of Hellman for acceptance. Hellman has not been made a party to this proceeding, and if the prosecutors prevail in this case, his rights under his lowest bid must necessarily be cut off without granting him an opportunity to be heard.

It will be seen therefore that the prosecutors are seeking by means of this writ not to enforce their alleged existing contracts with the borough, nor to recover damages for the breach of the contract by the borough, a breach arising because of the borough's refusal longer to recognize the existence of the contract and its refusal to allow the contractors to perform, but the prosecutors are endeavoring to set aside certain ordinances which have displayed the intention of the borough to refuse performance by substitution of other and

different plans, and thus render the contracts incapable of performance and seek to stay the proceedings on the part of the borough, pending this controversy between it and the contractors.

The ordinary method for redress of injuries for the refusal to allow a contract to be carried out is either by a suit in equity for its specific performance or by a common law action to recover damages, including profits, which would have accrued to the contractor had he been allowed to proceed. Neither of these objects can be obtained in this proceeding. The writ of *certiorari* is directed to some illegality in the passage of the ordinances; none is alleged or appears except it be that the ordinances have the effect to abrogate an alleged contract, which it is said is unconstitutional, or, more properly speaking, is claimed to render the municipal action void, because infringing upon the principle contained in the federal and state constitutions prohibiting the passage of any law impairing the obligation of a contract. *U. S. Const.,* art. 1, § 10; *N. J. Const., art.* 4, § 7, ¶ 3.

Assuming that the ordinances in question contain this vice, it will be at once perceived that it is not necessary for the prosecutors, in order to enforce their remedies in a court of equity or in a common law jurisdiction, as a preliminary step, to make void the ordinances.

A suit for specific performance or for the recovery of damages can be maintained and prosecuted under this constitutional protection just as completely with the ordinances in existence as if they had been blotted out by the writ of *certiorari*. There may also be doubt whether legislation, which is subject to the above criticism, is itself wholly void for all purposes or only rendered ineffective in particular cases where it would impair a contract. If so, it would not of necessity lead to the result of voiding the ordinances *in toto*.

The case then seems to narrow down to this.

Two contractors, whose only standing is their *status* as such, have been refused by the borough to be allowed to carry out their contracts; remedies for the breach of which contracts are complete in their hands, although the ordinances

be in existence. They seek to hold up a public improvement and necessary work while they are litigating with the borough over an unimportant matter, unimportant in that it will not serve beneficially their purpose as a necessary means to enforce their remedy; but may serve as an obstacle to the prosecution of the public work, and thereby indirectly infuse a sort of coercion into the litigation to induce the borough to come to their terms.

It must be perfectly clear that to allow the use of the writ of *certiorari* to accomplish such a purpose or be employed under circumstances where its use cannot be beneficial or an aid but must result in what might be duress, would be an abuse of the discretion which is reposed in the court in issuing a writ of this nature.

The prosecutors urge that the supplement to the Borough act approved April 11th, 1910 (*Pamph. L., p.* 362), renders it necessary for boroughs to have a vote authorizing the construction of a disposal plant. I do not so construe this act.

The power to construct disposal plants was fully conferred upon all municipalities by the act of 1907. *Pamph. L., p.* 707. The supplement of 1910 is to the Borough act and deals with "the construction or purchase of a drainage or sewerage system including disposal plant," not with the erection of disposal plants. Besides, the act of 1910 merely enacts that two questions may be submitted to the voters at one election and upon the same ballot. It has not the effect of requiring the proposition to install a disposal plant to be used in connection with a pre-established and existing sewer system, to be first submitted to popular vote.

For these reasons the rule will be discharged, with costs.