R. JOSEPH BRUDER, PLAINTIFF-APPELLANT, v. TEACH-
ERS' PENSION & ANNUITY FUND, A CORPORATION
OF NEW JERSEY, DEFENDANT-RESPONDENT.

Argued May 6, 1958—Decided June 2, 1958.

*Mr. Jerome C. Eisenberg* argued the cause for the plaintiff-appellant (*Mr. Jack B. Kirsten,* on the brief; *Messrs. Eisenberg & Spicer,* attorneys).

*Mr. David D. Furman,* Acting Attorney-General of the State of New Jersey, argued the cause for the defendant-respondent.

The opinion of the court was delivered by

BURLING, J. This is an action, commenced in the Superior Court, Law Division, to recover judgment for $360.53 alleged to be a portion of accumulated deductions wrongfully withheld by the defendant, the Teachers' Pension and Annuity Fund (hereinafter referred to as the Pension Fund). The trial court, pursuant to defendant's motion, entered a summary judgment in favor of the defendant and the plaintiff appealed. We certified the cause prior to hearing in the Superior Court, Appellate Division, because of the principles of law involved and their application to this case and to other comparable claims.

Plaintiff, a veteran of World War II, was, prior to military service during the years 1942 until 1945, and has since been, a teacher employed by the Newark Board of Education. During his three year service in the armed forces the Newark Board of Education, pursuant to *R. S.* 38:23–6, made contributions for the plaintiff to the Pension Fund. These contributions, totalling $360.53, form the subject matter of the instant controversy.

This dispute involves the meaning of a provision of the Teachers' Pension and Annuity Fund—Social Security Integration Act. *N. J. S. A.* 18:13–112.3 *et seq.* This act has been patterned after the Public Employees Retirement System Act, *N. J. S. A.* 43:15A–1 *et seq.* Both acts are part of an over-all revision of the pension policies in this State, the purpose of which was to provide improved economic security benefits to public employees and teachers by integrating the respective retirement acts with the Federal Social Security Act. See *Bureau of N. J. Public Employees, A Report on the Improvement of the Economic Security of N. J. State Employees* (1953). In addition, the Legislature, in order to provide enhanced benefits for veterans in the employments covered and who were previously eligible for retirement under the Veterans' Retirement Act, *R. S.* 43:4–1 *et seq.,* included such veterans within the coverage of the Public Employees Retirement System Act and the Teachers' Pension and Annuity Fund Act. See, *A Report on the Improvement of the Economic Security of N. J. State Employees, supra, pp.* 10–12. As part of the plan to integrate the benefits of the Veterans' Retirement Act into the Teachers' Pension and Annuity Fund Act (of which more hereafter), the Legislature provided in *N. J. S. A.* 18:13–112.72(a) that a refund shall be made to each veteran member of "his accumulated deductions as of January 1, 1956, less contributions based on his compensation for the year 1955 at the rate of contribution provided in subsection 'b'." Pursuant to *N. J. S. A.* 18:13–112.72(a) a refund was made to plaintiff of $3,632.66, being the total of contributions made by him during the period prior to January 1, 1955.

Thereupon plaintiff made an additional demand upon the Pension Fund for the return of the wartime service contributions of $360.53. The Pension Fund on February 21, 1957 refused to honor the demand, creating the issue herein involved, and thereafter on March 22, 1957 plaintiff brought an action in the Superior Court, Law Division, to recover the amount allegedly owing to him.

The Pension Fund moved for a summary judgment contending that: (a) the action is barred by the defense of sovereign immunity, or (b) the act, *N. J. S. A.* 18:13–112.3 *et seq.,* provides for no such refund. The motion was heard by a County Court judge assigned under the integrated civil trial calendar of Essex County to the Superior Court. The trial judge concluded that the Pension Fund was not subject to suit because of the doctrine of sovereign immunity, relying upon the *dictum* to that effect in the case of *Nordmann v. Johnson,* 123 *N. J. L.* 259, 260 (*E. & A.* 1939). At the hearing the plaintiff requested that the case be retained as "a suit requiring a state official to perform an administrative function required by law." Plaintiff sought leave to amend the complaint to one in lieu of prerogative writ (*mandamus*) and to join, as a party defendant, the particular administrative official charged with the alleged ministerial duty. The trial judge rejected this request, concluding that, since the general assignment under which the County Court judges were empowered to hear causes in the Superior Court expressly excluded actions in lieu of prerogative writ, he was without any authority in the matter. See *R. R.* 1:31–1; *cf. Brunswick Village v. Knof,* 29 *N. J. Super.* 238 (*App. Div.* 1954). A summary judgment for the defendant was then entered "without prejudice to the institution of an action in lieu of prerogative writ" by the plaintiff.

It is our view that we need not decide the question of whether the Pension Fund is juristically the "alter ego" of the State so as to be cloaked with sovereign immunity, or whether there is in the statute an implicit consent to be sued. It is well settled that the doctrine of sovereign immunity will not bar a prerogative writ proceeding commenced

to compel the exercise of a ministerial duty imposed by law upon a state official. *Jersey City v. Zink,* 133 *N. J. L.* 437 (*E. & A.* 1945); *Duke Power Co. v. Patten,* 20 *N. J.* 42 (1955); *cf. Gallena v. Scott,* 11 *N. J.* 231 (1953). And it makes no difference in this regard, that the duty is the payment of money. The rationale of the rule is succinctly set forth in *Jersey City v. Zink, supra.* It is

"that a sovereign state must be presumed to be willing that its laws shall be obeyed. Through its laws it speaks to its servants and commands them to do that which is required. Certainly those servants by their acts of disobedience do not represent or stand for the State. The action on *mandamus,* therefore, instead of being a suit against the State, is against its servants to compel them to do that duty, which by accepting office, they agreed to perform, * * *. Where the duty of a public treasury official is delineated and 'charged by statute,' the writ will clearly lie." (133 *N. J. L.* at *page* 440)

The statute, *N. J. S. A.* 18:13–112.72(a), directs that "each veteran member *shall* have returned to him * * * his accumulated deductions" (emphasis supplied). The legislative mandate is clear, and involves no exercise of administrative discretion. Moreover, a prerogative writ proceeding is not barred because of the fact that there has been no judicial determination of whether the term "accumulated deductions" includes wartime service contributions made by the employer. As stated by Mr. Chief Justice Vanderbilt in *Duke Power Co. v. Patten, supra,*

"But we do not understand that the lack of any judicial decisions definitely setting forth the meaning of a statute is any disabling factor in the pursuit of a proceeding in lieu of a prerogative writ. What of the myriad of statutes that are so clear and unmistakable in their meaning as to require no construction? Can it be said that any duty imposed by such statutes cannot be enforced by action in lieu of prerogative writ because their construction is not settled? The fact that someone contends for a meaning different from that clearly expressed does not make the construction of a law unsettled. If this were so, then a proceeding in lieu of *mandamus* would never lie because the defendant would merely have to claim that he believes the duty required of him was different than that sought to be compelled. Rather the rule is that a litigant may bring an action in lieu of the prerogative writ based upon the premise that he can

establish that the ministerial duty to be performed by the officer is set forth in language so clear and unmistakable as to be without any doubt as to the meaning thereof. If he is correct the order will issue; if he is not it will be denied, *Cooper v. State Board*, 114 *N. J. L.* 10 (*Sup. Ct.* 1934), affirmed 115 *N. J. L.* 115 (*E. & A.* 1935); *High, Extraordinary Legal Remedies* 12, § 9; see also *Jersey City v. Zink*, 133 *N. J. L.* 437 (*E. & A.* 1945)."

■ Since (as we have concluded) the instant action is maintainable as one in lieu of prerogative writ, the plaintiff contends that the trial judge should have retained the cause for the purpose of reassignment to a judge empowered to amend the complaint and to determine the merits. This contention is correct. We are of the view that the trial court erred in not retaining the cause for such purpose.

*R. R.* 1:31–1 provides, in part, that "The integrated list shall not include proceedings in lieu of prerogative writs. which shall only be heard by a judge of the Superior Court." But this disability of the County Court judge does not require that an action in lieu of prerogative writ, whether initially commenced as such or whether, as here, upon a motion to amend the complaint, be dismissed for want of authority in the judge to dispose of it. It is by now a familiar refrain that our adjective jurisprudence is designed to achieve the ideal of substantial justice on the merits. The disability of the trial judge below is analogous to a situation where an action is commenced in a court without jurisdiction of the subject matter. In that instance *R. R.* 1:27D(a) provides:

"(a) Except as elsewhere provided in these rules, and subject to the right to be prosecuted by indictment, where any court of this State is without jurisdiction of the subject matter of an action, issue or cause, it shall, on motion or on its own initiative, order the action or cause, with the record and all papers on file, transferred to the proper court for determination; and the action or cause shall then be proceeded upon as if it had been originally commenced in the proper court."

The cause herein should have been treated as one within the intendment of *R. R.* 1:27D(a) and the trial judge should have referred the matter back to the assignment judge for reassignment to a judge empowered to dispose of the cause.

██ As a matter of expedition, since the facts are undisputed and the issue is purely legal, we shall exercise our power of original jurisdiction in order to completely determine the cause on its merits. *N. J. Const.* 1947, *art.* VI, *Sec.* V, *par.* 3, implemented by *R. R.* 1:5–4(*a*). We might further note that the parties are desirous of a meritorious disposition, the Pension Fund conceding that this is a "test case."

The original complaint was filed within the 30-day time limitation previously prescribed by the applicable prerogative writ rule, *R. R.* 4:88–15, since amended, effective September 4, 1957, and we cannot perceive any prejudice which would result to the Pension Fund from allowance of the amendment.

██ We come then, to the meritorious issue, *i. e.*, whether the monies contributed by the Newark Board of Education during plaintiff's wartime service pursuant to *R. S.* 38:23–6 are included within the term "accumulated deductions" as used in *N. J. S. A.* 18:13–112.72(*a*) which provides:

"a. Each veteran member shall have returned to him, except as provided in subsection 'd' of this section, his accumulated deductions as of January 1, 1956, less contributions based on his compensation for the year 1955 at the rate of contribution provided in subsection 'b.' All service rendered in office, position, or employment of this State or of a county, municipality, or school district, board of education or other employer by such veteran member previous to January 1, 1955 for which evidence satisfactory to the board of trustees is presented within 1 year of the effective date of this section, shall be credited to him as a 'Class B' member and the accrued liability for such credit shall be paid by the employer as provided in section 33."

We are of the view that they are not. An examination of the applicable statutes reveals a correlation in the plain meaning of the language utilized by the Legislature.

The term "accumulated deductions" as used in the act, *N. J. S. A.* 18:13–112.3 *et seq.*, is defined in *N. J. S. A.* 18:13–112.4 as follows:

"a. 'Accumulated deductions' means the sum of all the amounts, deducted from the compensation of a member or contributed by

him, including interest credited prior to January 1, 1956, standing to the credit of his individual account in the annuity savings fund."

The term "compensation" is defined in the same section as "the contractual salary for services as a teacher as defined in this act."

Thus, "accumulated deductions" are the sums deducted from salary for services or contributed by the employee to the Pension Fund. *R. S.* 38:23–6 provides that while the employee is in wartime service:

"the proper officer of the State, county, municipality, school district, political subdivision, board, body, agency or commission shall contribute or cause to be contributed to such fund the amount required by the terms of the statute governing such fund based upon the amount of compensation received by such person prior to his entry into such service and during the period first mentioned in this section any such person receiving compensation from the State, county, municipality, school district, political subdivision, board, body, agency or commission, shall continue to contribute the amount required by statute to be paid by members of such fund and during the period first mentioned in this section any such person not receiving compensation from the State, county, municipality, school district, political subdivision, board, body, agency or commission shall not be required to contribute the amount required by statute to be paid by members of such fund, but said amount shall be *contributed for* such person by the State, county, municipality, school district, political subdivision, board, body, agency or commission." (Emphasis supplied)

It is clear that contributions made during wartime service by the employer to the Pension Fund pursuant to *R. S.* 38:23–6 are contributed "for" the employee and are not contributed "by" him or deducted from salary as required by *N. J. S. A.* 18:13–112.4 and 112.72(*a*). There is manifest a careful legislative design to exclude from the definition of the term "accumulated deductions" amounts which, under other statutes, were contributed for the employee.

The reason for this result becomes evident from a perusal of the act. Veterans, eligible for membership in the Teachers' Pension and Annuity Fund, are precluded from retiring under the non-contributory Veterans' Retirement Act, *R. S.*

43:4–1 *et seq., N. J. S. A.* 18:13–112.54. See also *Race v. Board of Education of Town of Newton,* 37 *N. J. Super.* 333 (*App. Div.* 1955). But, at the same time, *N. J. S. A.* 18:13–112.72(*a*) grants to veterans free service credits in the Fund for service rendered prior to January 1, 1955, the accrued liability for such service credits to be borne by the veteran's employer.

Presumably in recognition of the fact that some veterans had been members of and had made contributions to the Teachers' Pension and Annuity Fund prior to January 1, 1955, the Legislature made provision to place on an equal footing those who had been prior members and those who had not. Thus, the purpose of the provision in *N. J. S. A.* 18:13–112.72(*a*) that "each veteran member shall have returned to him, * * * his accumulated deductions." At the same time, however, it was not intended that employers, who had made contributions for a veteran during wartime service in order that his pension rights should not suffer while in the performance of his duty to his country, should be obliged to contribute again for the period covered by wartime service.

This conclusion is made further apparent by an examination of the section of the act dealing with the voluntary withdrawal from the Pension Fund.

*N. J. S. A.* 18:13–112.36 provides in part:

"A member who withdraws from service or ceases to be a teacher for any cause other than death or retirement shall receive all, or such part as he demands, of the accumulated deductions standing to the credit of his individual account in the annuity savings fund, * * *.

"* * * No veteran member shall be entitled to withdraw the amount of his accumulated deductions contributed by his employer covering his military leave unless he shall have returned to the payroll and contributed to the retirement system for a period of 90 days."

In this section the Legislature did not use the phrase "accumulated deductions" so that the reader would be merely referred to the definition section. Rather, it specifically

modified the term "accumulated deductions" by the insertion of the phrase "standing to the credit of his individual account." The design was to specially define the term "accumulated deductions" for the purpose of that section without the restriction that they be "deducted from the compensation of a member or contributed by him" as the term is generally defined in *N. J. S. A.* 18:13–112.4. That "accumulated deductions standing to the credit of his individual account" is intended to be more expansive and to encompass contributions made by employers during wartime service is evident from the quoted provision limiting the right to recover such payments to situations where the veteran has returned to work and contributed to the retirement system for 90 days.

If the Legislature intended to include contributions by employers during wartime service within the term "accumulated deductions" as utilized in *N. J. S. A.* 18:13–112.72(*a*), it had only to so specify in language comparable to that utilized in *N. J. S. A.* 18:13–112.36. Instead, it manifested a significant silence.

The reason for the differentiation in treatment between the right to recover wartime service credits in the event of withdrawal from the Pension Fund and the right to recover such monies where membership is continued is to be found in those sections of the act setting forth the obligations of the employers to the Pension Fund. Where membership in the Fund is retained by an employee, his employer is under a continuing obligation to contribute to the contingent reserve fund in order to maintain the actuarial soundness of the Pension Fund. *N. J. S. A.* 18:13–112.20(*d*); *N. J. S. A.* 18:13–112.35(*a*). This liability ceases, of course, upon the voluntary withdrawal of membership. In that event it was the legislative intent that the *quid pro quo* received by the employee in exchange for the cessation of future obligation of the employer shall be monies contributed by the employer for the benefit of the employee during wartime service. But where, as here, the veteran employee receives free service credit prior to January 1, 1955 and, in addition, seeks the fruits of a future pension, the Legislature deter-

mined that the wartime contribution shall remain in the Pension Fund.

The cause shall be remanded to the Superior Court, Law Division, for the purpose of an appropriate amendment of the complaint as one in lieu of prerogative writ and for the substitution of the appropriate party defendant. Thereafter a summary judgment shall be entered in accordance with this opinion.

*For affirmance*—Chief Justice WEINTRAUB, and Justices HEHER, WACHENFELD, BURLING, JACOBS, FRANCIS and PROCTOR—7.

*For reversal*—None.