PROFESSIONAL ASSOCIATION, STATE DEPARTMENT OF EDUCATION, JOSEPH F. KELLY, ROBERT H. ARENTS, GEORGE A. SNOW AND PAUL HILLAIRE, APPELLANTS, v. THE COMMISSIONER OF EDUCATION AND THE SALARY ADJUSTMENT COMMITTEE, RESPONDENTS.

Superior Court of New Jersey
Appellate Division

Argued November 11, 1974—Decided February 7, 1975.

Before Judges MICHELS, MORGAN and KENTZ.

*Mr. Michael J. Herbert* argued the cause for appellants (*Messrs. Sterns & Greenberg,* attorneys; *Mr. William S. Greenberg,* of counsel).

*Mrs. Erminie L. Conley,* Deputy Attorney General, argued the cause for respondents (*Mr. William F. Hyland,* Attorney General of New Jersey, attorney; *Mr. Stephen Skillman,* Assistant Attorney General, of counsel).

The opinion of the court was delivered by

MICHELS, J. A. D. Plaintiffs appeal from an action taken by the Salary Adjustment Committee (the Committee) on January 14, 1974 which approved lump-sum sick leave payments to unclassified employees in the Department of Education (Department) pursuant to *N. J. S. A.* 11:14–9 (*L.* 1973, *c.* 130, § 1), provided said employees follow the standard method for the use, earning and accumulation of sick leave and vacation leave followed by classified employees, and from an action taken by the Acting Commissioner of Education (Commissioner) the same day which changed the vacation policy for unclassified employees in the Department from 22 vacation days a year to the same vacation schedule applicable to classified employees in the Department. See *N. J. S. A.* 11:14–1.1 and 1.2; *N. J. A. C.* 4: 1–17.11.

A brief review of the context in which this appeal arises is helpful to its resolution. In 1973 our Legislature passed "An Act concerning supplemental compensation payments for public employees in certain cases" (*L.* 1973, *c.* 130, § 1; *N. J. S. A.* 11:14–9 *et seq.*). The act, which was approved on May 16, 1973, became effective on July 1, 1973, and provided in § 1 (*N. J. S. A.* 11:14–9):

> Each employee in the classified service of the State and each State employee not in the classified service who has been granted sick leave under terms and conditions similar to classified employees shall be entitled upon retirement from a State-administered retirement system to receive a lump sum payment as supplemental compensation for each full day of earned and unused accumulated sick leave which is credited to him on the effective date of his retirement in the manner prescribed by section 4 of P. L. 1947, c. 201 (C. 11:14–5).

In order to implement the act § 9 (*N. J. S. A.* 11:14–17) declared that

> The President of the Civil Service Commission, the State Treasurer and the Director of the Division of Budget and Accounting shall jointly prepare and promulgate rules and regulations to implement this act, including but not limited to the procedure for application for, and payment of, such supplemental compensation and reasonable standards for determining which State employees are eligible for the supplemental compensation payment provided herein.

Pursuant to this grant of administrative power the President of the Civil Service Commission, the State Treasurer and the Director of the Division of Budget and Accounting (who comprise the Committee) promulgated Joint Regulations on July 12, 1973 for administering the payment of supplemental compensation for earned and unused sick leave. These Joint Regulations provided, among other things, that "State employees not in the classified service who have been granted sick leave under terms and conditions similar to classified employees" were eligible for supplemental compensation under the act, and established a procedure for determining the eligibility of class titles of state employees not in the classified service. In addition, they established

guidelines by which the eligibility of nonclassified titles for such compensation would be determined, providing in pertinent part:

> The eligibility of an employee will be determined by such class title held at any time during his State employment. Eligibility of class title will not be approved by the Salary Adjustment Committee unless the following standards and guidelines have been adhered to:
> 1. Sick leave days were earned by all employees within that class title on the basis of one working day per month during the remainder of the first calendar year of employment after initial appointment and fifteen working days per calendar year thereafter.

Thereafter, at its meeting of December 10, 1973 the Committee made the following determination with respect to requests for said lump-sum payments:

> Any sick leave payment to a non-classified employee in the Department of Education shall take into account as an offset the additional leave authorized for such person during his employment. This is in accordance with the Deputy Attorney General [sic] opinion rendered in letter to Commissioner James A. Alloway, dated July 13, 1973.

The State Board of Education (Board of Education) challenged this determination, and requested that it be reconsidered by the Committee. The Board of Education argued that L. 1973, c. 130, is applicable to all employees, whether classified or unclassified, who receive the same sick leave benefits, and that this condition has been met since both classes of employees in the Department receive the same sick leave allowances. Subsequently an agreement was reached between the Committee and the Commissioner whereby the Commissioner agreed to change the vacation benefits of the Department's unclassified employees to conform to those provided for classified employees, and the Committee agreed to rescind its determination of December 10, 1973.

In order to implement this agreement the Committee, on January 14, 1974, adopted the following policy:

The Salary Adjustment Committee approves the following lump sum sick leave policy for non-classified employees in the Department of Education:

Lump sum sick leave payments for non-classified employees in the Department of Education shall be considered in accordance with the statutes and regulations in the same manner as for classified State employees; provided, however, that effective January 1, 1974 all present and new non-classified employees in the Department of Education follow the standard (12, 15 or 20 days of vacation predicated on years of service; and 15 days of annual sick leave) method for the use, earning and accumulating of sick leave and vacation leave.

With the implementation of the above procedure, the Salary Adjustment Committee approves: (a) credit for accumulated sick leave balances as recorded to January 1, 1974 (with no reduction or offset for the additional amount of vacation leave which was received over and above classified employees), (b) credit for 1973 vacation leave balances up to a maximum of 22 days carried over into calendar year 1974 and (c) administrative leave for the employees indicated herein.

The Commissioner, in turn, issued a memorandum that same day to all unclassified employees in the Department, the following part of which is also challenged by plaintiffs on this appeal:

4. Effective January 1, 1974 unclassified twelve-month employees may carry forward 1973 earned unused vacation credits to a maximum of twenty-two days.
5. Effective January 1, 1974, unclassified twelve-month employees will earn vacation credits at the same rate as classified twelve-month employees.
   (a) From date of employment to end of the calendar year in which employment occurs-one full day for each full month worked.
   (b) Twelve working days per calendar year up to ten years.
   (c) Fifteen working days per calendar year after the completion of ten years and up to 20 years of service.
   (d) Twenty working days per calendar year after completion of 20 years of service.
   (e) The maximum number of days that may be carried forward under this schedule may not be in excess of the number of days earned in the preceding year.

After plaintiffs filed their notice of appeal challenging the above actions the Committee on June 11, 1974 supplemented the Joint Regulations relating to the administration of payments for unused sick leave, granting all un-

classified state employees not previously covered by said regulations (including unclassified employees in the Department of Higher Education) an option to either retain their existing vacation schedule or place themselves under the same vacation provisions as classified employees. If the unclassified employees chose the latter, they would be eligible for lump-sum payments as supplemental compensation for earned and unused accumulated sick leave pursuant to *L.* 1973, *c.* 130. If they did not so elect, they would be ineligible for such supplemental compensation benefits. Thereafter, on June 26, 1974, the Committee, on the recommendation of the Attorney General, further supplemented the Joint Regulations, providing the same option to unclassified employees of the Department. See Supplement #6, dated July 8, 1974. This action superseded the Committee's action on January 14, 1974. Finally, on June 27, 1974 the Commissioner issued a "memorandum to Division Heads and County Superintendents", rescinding his action of January 14, 1974 and notifying the unclassified employees in the Department of the option granted to them by the Committee at its meeting on June 26, 1974.

On this appeal plaintiffs challenge the actions taken on January 14, 1974 by the Committee and the Commissioner, contending that such actions were (1) beyond the scope of authority delegated to them and therefore null and void; (2) arbitrary and capricious, and (3) promulgated in violation of the Administrative Procedure Act, *N. J. S. A.* 52:14B-1 *et seq.* While these actions have either been rescinded or superseded, the action taken by the Committee at its June 26, 1974 meeting still leaves open for our determination the fundamental question of whether the Committee had the authority to consider vacation leave in determining whether sick leave was granted to unclassified employees under terms and conditions similar to classified employees, and require the former to place themselves under the same vacation benefits as classified employees to be eligible for supplemental compensation payments under *L.* of 1973, *c.* 130.

The thrust of the Committee's argument is that unclassified employees have not been granted sick leave under terms and conditions similar to classified employees because unclassified employees, whose vacations are determined solely by the appointing authority, receive more vacation time than do classified employees, whose vacation benefits are set by the Civil Service Act and Civil Service Rules. See *N. J. S. A.* 11:14–1.1 and 1.2; *N. J. A. C.* 4:1–17.11. They argue that when the unclassified employees' 22 vacation days a year (which may be used for sick leave) are added to their sick leave, the total "sick leave" available to them is greater than the total sick leave available to classified employees, and the unclassified employees "would be given an inequitable advantage over classified employees in accumulating sick leave if the amount of vacation leave was not to be considered."

*N. J. S. A.* 11:14–17 expressly grants the Committee the power to promulgate rules and regulations to implement the act, including the power to establish reasonable standards for determining which state employees are eligible for supplemental compensation payments. This express grant of power is attended by such incidental authority as may fairly and reasonably be considered necessary or appropriate to make it effective, and should be construed so as to permit the fullest accomplishment of the legislative intent. See *Cammarata v. Essex County Park Comm'n*, 26 *N. J.* 404, 411 (1958). However, the exercise of such power is necessarily restrained by the declared policy and spirit of the statute and the criteria and standards set forth therein. As is so aptly pointed out in *Abelson's, Inc. v. N. J. State Bd. of Optometrists*, 5 *N. J.* 412 (1950):

* * * This a grant of administrative power for the execution of the statutory policy; and its exercise is of necessity restrained by the declared policy and spirit of the statute and the criteria and standards therein laid down, for a grant not thus confined would constitute a delegation of essential legislative power in contravention of constitutional limitations. The distinction is between the making and the execution of the law. The authority to make rules and regula-

tions for the effectuation of the statutory policy is administrative and not legislative, if its exercise is confined by certain and definite standards of action, even though the regulations be given the force and effect of law. It is a corollary of this principle that the rules and regulations and administrative action cannot subvert or enlarge upon the statutory policy or the rules and regulations therein set down. Administrative implementation cannot deviate from the principle and policy of the statute. [at 423–424]

■ The act is clear and unambiguous. It provides a lump-sum payment, as supplemental compensation for earned and unused accumulated sick leave to each employee in the classified service of the State and each state employee in the unclassified service "who has been granted sick leave under terms and conditions similar to classified employees." *N. J. S. A.* 11:14–9. The act does not expressly empower the Committee, in establishing standards for determining eligibility, to consider vacation leave and to require the unclassified employees to give up their regular vacation benefits and place themselves under the same vacation schedule as classified employees in order to qualify for supplemental compensation. We do not find that the power to impose such a condition or qualification is either incidental to the power expressly granted or reasonably necessary or appropriate to accomplish the legislative intent.

These two classes of state service have long existed in New Jersey, and it is well-recognized that the benefits and advantages of the one are not necessarily extended to the other. For example, in the unclassified service, unlike the classified service, appointment can be made without competitive examination, and upon appointment tenure is not conferred. See *Perella v. Bd. of Education, Jersey City,* 51 *N. J.* 323, 333 (1968); *State Troopers Fraternal Ass'n. v. State,* 115 *N. J. Super.* 503, 507–508 (Ch. Div. 1971), aff'd 119 *N. J. Super.* 375, 376 (App. Div. 1972), aff'd 62 *N. J.* 302 (1973). Obviously, our Legislature was cognizant of this and other fundamental differences in the two classes of the state service, including the differences in vacation benefits afforded to unclassified employees at the discretion of the

appointing authority and to classified employees pursuant to our Civil Service Act and Administrative Code. Vacation benefits may be greater for unclassified employees in the Department than for classified employees, and to that extent the lump-sum payment for earned and unused sick leave to both classes may appear inequitable. However, the clear language of the act (*N. J. S. A.* 11:14-9) does not authorize or even suggest that the Committee may consider vacation leave in determining whether sick leave was granted to unclassified employees under terms and conditions similar to classified employees.

The standards and guidelines for payment of supplemental compensation to unclassified employees originally promulgated by the Committee required that sick leave be earned by them on a basis similar to that required for classified employees by the Civil service Act and Civil Service Rules. See *N. J. S. A.* 11:14-2; *N. J. A. C.* 4:1-17.16. The qualification or condition for eligibility subsequently imposed by the Committee thwarted the expressed policy of the act and transcended the legitimate rule-making power delegated to the Committee. See *Frigiola v. State Bd. of Ed.*, 25 *N. J. Super.* 75, 81 (App. Div. 1953).

Accordingly, the action of the Committee taken at the meeting of June 26, 1974 (incorporated in Supplement #2, dated July 8, 1974) requiring unclassified employees to elect the same vacation benefits provided to classified employees as a condition for the payment of supplemental compensation under *L.* 1973, *c.* 130, is hereby declared void and set aside. Similarly, the prior action of the Committee taken on January 14, 1974, which conditioned eligibility for such statutory benefits on unclassified employees following the standard method for the use, earning and accumulation of sick and vacation leave followed by classified employees is also declared void and set aside. In view of our holding it is unnecessary for us to determine whether actions taken by the Committee were subject to the Administrative Procedure Act and, if so, whether there had been compliance therewith.