175 N.J. Super. 84 (1980)
417 A.2d 592
FRAPAUL CONSTRUCTION CO., INC., APPELLANT,
v.
STATE OF NEW JERSEY, DEPARTMENT OF TRANSPORTATION, RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued June 10, 1980.
Decided July 17, 1980.
*86 Before Judges MATTHEWS, ARD and POLOW.
James F. Ryan, Jr. argued the cause for appellant (Dowd, Dowd & Ryan, attorneys).
*87 Stephen A. Herman, Deputy Attorney General, argued the cause for respondent (John J. Degnan, Attorney General of New Jersey, attorney; Stephen Skillman, Assistant Attorney General, of counsel; Stephen A. Herman and Edward R. Hannaman, Deputy Attorneys General, on the brief).
The opinion of the court was delivered by MATTHEWS, P.J.A.D.
Because of a dispute as to payment under a contract between appellant Frapaul Construction Co., Inc. (Frapaul) and respondent State of New Jersey, Department of Transportation (DOT), Frapaul submitted a claim to the DOT by letter. Frapaul's claim was considered by the DOT's Claims Committee and denied, and that decision was approved by the Deputy Commissioner. This appeal followed.
The DOT awarded a contract to Frapaul on June 23, 1977 for certain construction work on sections 4F and 4H of Route 20 in the City of Paterson, County of Passaic. The contract consisted of the New Jersey State Highway Department's Standard Specifications for Road and Bridge Construction, 1961, and the supplementary specifications and addenda thereto.
Addendum No. 1 to Article 1.4.3 provided that 3,200 linear feet of portable curb was required as part of the system for the maintenance and protection of traffic. This system was in effect during all stages of the construction. In addition, the first plan sheet states the contract quantity of this curb to be 3,200 linear feet. The project, which consisted of four separate stages, required curb placement and relocation in the first three stages.
After Stage II placement of the curbing, Frapaul contested the DOT's contract quantity of 3,200 linear feet. As a result of a dispute over the quantity of curbing for which payment was due, Frapaul presented a claim to the DOT. Consideration of Frapaul's claim occurred through the DOT's Claims Committee as provided for in N.J.A.C. 16:33-2.1 et seq. The Committee, composed of various DOT personnel, solicits the explanation of *88 contractor claims submitted under the standard and supplementary specifications and allows questioning by the DOT to better define the claims. As a result of reviewing the project file, listening to the contractor's position and discussing the matter, the Committee decides whether or not to recommend approval of the claim to the Commissioner.
Here, the amount of 3,200 linear feet of portable curb was apparently sufficient for the entire project due to the fact that portions could be removed and relocated as the project progressed through its stages. Portions placed in one stage were not required to remain in place during the entire project and could be utilized in later stages. Frapaul concedes that only 3,200 linear feet of curbing had to be purchased for the project. However, since the total curbing actually put in place for the three stages totaled 6,318 linear feet as measured on the plans, Frapaul based its costs for approximately 6,300 linear feet of curbing. It was Frapaul's position that its bid price did not include costs for furnishing a lesser amount of curbing at various locations throughout the project.
The Claims Committee reviewed the facts, both on its own and with Frapaul. After deliberating, the Committee voted unanimously to deny the claim based on the quantity and payment provisions of the supplementary specifications.
Prior to 1970 the State was protected from actions in contract and tort by sovereign immunity. In 1970, however, the Supreme Court abolished the common law sovereign immunity of the State in contract actions. P, T & L Constr. Co. v. Transportation Dep't Comm'r, 55 N.J. 341 (1970). In doing so the court made reference to the availability of a forum to entertain those claims:
Obviously there should be an established forum in which all such claims may be presented as of right and upon known principles. The judiciary of course is able to meet that need. This is not to say that another tribunal would be unsuitable. The point is that a court of claims has not been created, and until one is established, if it should be, the judiciary ought not to withhold its hand on a mere assumption that its coordinate branches would want it that way. [at 346]
Subsequent to the decision, Title 59 of the New Jersey Statutes was enacted by the Legislature through the L. 1972, c. 45. *89 N.J.S.A. 59:13-1 et seq. is the portion of Title 59 which addresses the State's immunity in contract matters and is known as the New Jersey Contractual Liability Act.
Since Frapaul disputes payment under its contract with the DOT (a sovereign entity), any right to an action against the State must rest upon the New Jersey Contractual Liability Act. Parties contracting with the State must provide notice of claims and allow the agency a 90-day period in which to take action before suit may be filed. N.J.S.A. 59:13-5. The comment accompanying the act notes that a "sufficient period of time" is to be allowed in which "administrative action to adjust the dispute" may be taken. Thus, the act provides for a period in which consideration and decision on a claim may be made before the State is subjected to suit.
Here, Frapaul disputed the linear feet of portable curb for which payment was due. As prescribed by the act, DOT gathered facts through its Claims Committee, which considered and made a decision on the claim. However, agency determination is not a prerequisite for the right to sue the State. The act only requires the expiration of 90 days from the agency's receipt of claims. N.J.S.A. 59:13-5. Thus, 90 days after submitting its claim Frapaul was free to institute an action under the contract, whether the DOT had finished processing the claim or not.
Prior to the enactment of N.J.S.A. 59:1-1 et seq. the Attorney General submitted an extensive report to the Legislature on sovereign immunity.[1] The report, which may be regarded as the principal legislative history of the act, noted that the majority of jurisdictions utilized the regular court systems to settle contract matters and clearly suggested the use of trial courts for the *90 institution of actions against the State. The report disputed the need for a separate court of claims to adjudicate claims against governmental entities and quoted from California's study which was found to be "perhaps most persuasive" support for the use of trial courts. Report at 13-14.
The Attorney General strongly suggested that the trial divisions would be the forum in which contract actions against the State would be tried.
Consistent with the recommendation in the Attorney General's report, N.J.S.A. 59:13-4 provides that
The courts of competent jurisdiction of the State of New Jersey shall have jurisdiction over all claims against the State for breach of a contract, either express or implied in fact. Contract claims against the State shall be heard by a judge sitting without a jury. Except as otherwise expressly provided herein, all suits filed against the State under this chapter shall be in accordance with the rules governing the courts of the State of New Jersey.
The drafters of the Contractual Liability Act obviously contemplated that contract actions against the State should be instituted in the trial division pursuant to the Rules of Court. See N.J.Const. (1947), Art. VI, § III, par. 2.
Under R. 4:3-1 all actions, except those in which equitable relief is sought or those actions which are probate in nature, are to be instituted in the Law Division. Although R. 2:2-3(a)(2) provides that appeals from final decisions of administrative agencies may be taken to the Appellate Division as of right, the appellate review provided for is basically a substitution for the common law writ of certiorari. That writ was predominantly a form of appellate review to correct errors of law apparent on the face of the record of proceedings in a lower judicial or quasi-judicial tribunal. Baldwin Constr. Co. v. Essex Cty. Bd. of Tax., 16 N.J. 329, 345 (1954); Caldwell v. Lambrou, 161 N.J. Super. 284, 286 (Law Div. 1978). Certiorari was not available where there existed another adequate remedy either at law or equity. Wormser-Goodman Constr. Co. v. Belmar, 80 N.J.L. 240, 244 (Sup.Ct. 1910); Ippolito v. Hoboken Mayor, 60 N.J. Super. 477, 488 (App.Div. 1960). In Wormser-Goodman it was held that the ordinary method to seek redress of injuries resulting out of a construction contract was a specific performance suit in *91 equity or an action to recover damages at law, and not by writ of certiorari or other prerogative writ.
We deem it clear that the conclusions of the DOT Claims Committee are not final decisions within the contemplation of R. 2:2-3(a)(2). See Pfleger v. N.J. State Highway Dept., 104 N.J. Super. 289 (App.Div. 1968); Pressler, 1979 Court Rules, Comment R. 2:2-3. The Claims Committee does not provide a judicial type of hearing such as is necessary to adjudicate a construction contract controversy. Its proceedings do not provide for discovery nor do they provide the DOT an opportunity to present its own witnesses or the contractor the right to confront and cross-examine the DOT personnel. The witnesses who are presented to the Committee by the contractor do not testify under oath and, in addition, no evidence is introduced or marked.
In Pfleger plaintiff landowners brought an action to compel the DOT to institute condemnation proceedings in the Chancery Division. The Chancery Division transferred the matter to the Appellate Division. In remanding the matter to the Law Division we stated:
... There is no administrative machinery within the Department of Transportation for itself condemning land, for hearing the arguments for and against seeking condemnation in court, or for deciding whether or not a "taking" has been effected by the Department's actions. N.J.S.A. 27:1A-1 et seq. Nor is there a procedure in such cases by which a record may be made before the Department, upon which this court can review its decision. [104 N.J. Super. at 291-292]
So here, the DOT Claims Committee does not provide us with a record upon which to adjudicate a construction contract dispute. Although the Claims Committee prepares a transcript of its meetings, there is no requirement in the Contractual Liability Act or in the Rules of Court requiring the Claims Committee to keep such a record. In the absence of a transcript, it would be obvious that the Claims Committee cannot provide this court with a record adequate for appellate review of construction contract claims such as is involved here.
We also note that the Claims Committee's review of Frapaul's claim was simply nothing more than the result of *92 Frapaul's decision to exercise Articles 1.5.7 and 1.8.4 of the Standard Specifications. Neither of those sections nor the Contractual Liability Act required Frapaul actually to appear before the Claims Committee. Moreover, Frapaul's appearance before the Claims Committee does not prevent it from instituting an action in the Law Division pursuant to the provisions of the Contractual Liability Act. N.J.S.A. 59:13-5.
The notice provisions of the Contractual Liability Act are specifically intended to give state agencies an opportunity to determine the merits of the claims for the possibility of a settlement, as well as to investigate the claims for the purpose of preparing for trial. Newark Housing Auth. v. Sagner, 142 N.J. Super. 332 (App.Div. 1976). The Claims Committee merely provides the DOT a forum in which to analyze a claim pursuant to the requirements of N.J.S.A. 59:13-5.
Our reading of the Contractual Liability Act and the Rules Governing the Courts, and consideration of sound judicial administration, lead us to conclude that the jurisdiction of an action such as brought by Frapaul here is originally cognizable in the Law Division. Accordingly, the appeal is dismissed and the cause remanded to the Law Division, Passaic County, for the filing of a complaint and plenary proceedings thereon.
NOTES
[1] Report of the Attorney General's Task Force on Sovereign Immunity, (May 1972). The report addressed waiver of sovereign immunity in both tort and contract. N.J.S.A. 59:9-1 provides for tort claims to "be heard by a judge sitting without a jury or a judge and jury where appropriate demand therefor is made in accordance with the rules governing the courts of the State of New Jersey." Juries were not originally provided for in tort claims. Other than this provision, the language parallels that in the Contractual Liability Act. N.J.S.A. 59:13-4.