240 N.J. Super. 188 (1989)
572 A.2d 1191
PHILIP COHEN, NICHOLAS INGOGLIA, GORDON MACDONALD, ALAN SIEGEL, NORMAN SISSMAN, JOSEPH THORNTON AND BETTY WHALEN, PLAINTIFFS,
v.
BOARD OF TRUSTEES OF THE UNIVERSITY OF MEDICINE AND DENTISTRY OF NEW JERSEY, DEFENDANTS.
Superior Court of New Jersey, Chancery Division Middlesex County.
Decided December 22, 1989.
*191 Mark D. Shorr for plaintiffs (Hannoch Weisman, attorneys).
Jack M. Sabatino for defendants (Peter N. Perretti, Jr., Attorney General of New Jersey, attorney).
BACHMAN, J.S.C.
On June 24, 1988, plaintiffs, all salaried employees of the University of Medicine and Dentistry of New Jersey *192 ("UMDNJ"), filed a complaint alleging improper calculation and payment of salaries. Defendant, Board of Trustees of UMDNJ controls, manages and administers the university pursuant to statute with the power to establish the method of payment of its employees' salaries.
The UMDNJ has paid the named plaintiffs, and all others similarly situated, biweekly salaries calculated on a fiscal day basis. To obtain this biweekly amount, an employee's annual salary is divided by the number of working days in the State's fiscal year. This number is the daily rate of pay. The daily rate is then multiplied by the number of days worked in a two-week pay period. The resulting figure represents the employee's biweekly amount. The biweekly amount will fluctuate in each fiscal year dependent upon the number of fiscal days in a year. There will be either 260, 261 or 262 fiscal days in any given fiscal year.
Plaintiffs contend that both their collective bargaining agreement and N.J.S.A. 52:14-15 mandate calculation of salaries in a pure biweekly amount. This figure is realized by dividing an employee's annual salary by the number of two-week periods in a year. They further contend that the UMDNJ's method of calculation not only fails to compensate the employees completely but also results in less contribution to pensions and retirement systems by UMDNJ.
The present motion by the UMDNJ seeks to transfer this action to either the Appellate Division or the salary adjustment committee. As a consequence, the status of the UMDNJ as well as the actions of its board of trustees must be evaluated in light of R. 2:2-3.
The Legislature established the UMDNJ as a "body corporate and politic" possessing a high degree of self-government. N.J.S.A. 18A:64G-3 (Medical and Dental Education Act of 1970). In recognition of this legislative directive, the UMDNJ claims a unique status as "a truly independent entity whose autonomy is substantive rather than merely formal or organizational." *193 DeAngelis v. Addonizio, 103 N.J. Super. 238, 251-252, 247 A.2d 39 (Law Div. 1968). However, the university is still dependent upon the State for funding, N.J.S.A. 18A:64G-6(f), while responsible to the State to further declared public policies of higher education, N.J.S.A. 18A:64G-2.
The type of agency established, if any, by this statutory scheme and subsequent judicial interpretation becomes relevant in determining the applicability of R. 2:2-3 which guides appeals to the Appellate Division. The relevant portion of the rule states that appeals may be taken as a matter of right to the Appellate Division:
[t]o review final decisions or actions of any state administrative agency or officer, and to review the validity of any rule promulgated by such agency or officer.... [R. 2:2-3(a)(2)].
Hence, if the UMDNJ may be termed a state administrative agency within the ambit of this rule, the appeal of its final decision regarding the method of calculating payment of salaries may properly lie in the Appellate Division.
In determining the status of the UMDNJ, the court must focus on "whether the function and life of the particular agency is dependent upon the State in its management and control, and whether, it depends solely and entirely upon the financial subsistance it receives from the State." DeAngelis, supra, 103 N.J. Super. at 251-252, 247 A.2d 39, citing State v. Clark, 15 N.J. 334, 339, 104 A.2d 685 (1954).
The UMDNJ, through its board of trustees, possesses autonomy and discretion to direct and control the expenditure of funds appropriated by the State. N.J.S.A. 18A:64G-6. It also retains independent control over funding, bequests and grants received from sources other than the State. Ibid. Further, it is the board of trustees of UMDNJ which determines its policies, development and administrative directions including the authority to adopt by-laws, rules and regulations. N.J.S.A. 18A:64G-6(c), (g). Hence, the university is to act as "guilds of scholars ... responsible only to themselves." Snitow v. Rutgers University, 103 N.J. 116, 122, 510 A.2d 1118 (1986), quoting N.L.R.B. *194 v. Yeshiva University, 444 U.S. 672, 680, 100 S.Ct. 856, 861, 63 L.Ed.2d 115 (1980).
In recognition of this unique status as a state university, the Judiciary and the Legislature have denied agency status to the UMDNJ under particular circumstances. See DeAngelis, supra (Civil service status of UMDNJ employees denied as university functions as an autonomous entity rather than as agency of the State); see also N.J.S.A. 18A:64G-6(l) (University may enter into contracts with the State or any public body, department or agency of the State); N.J.S.A. 18A:64G-6, 7 (University capable of being sued and has the power to sue and therefore is not an agency of the State for purposes of the New Jersey Contractual Liability Act, N.J.S.A., 59:13-1 et seq.).
Similarly, expressing an identical rationale, Rutgers University has recently been held neither as an arm of the State entitled to Eleventh Amendment protections, Kovats v. Rutgers, The State University, 822 F.2d 1303 (3 Cir.1987), nor an alter-ego of the State but rather a "person" subject to 42 U.S.C.A. 1983 liability, Fuchilla v. Layman, 109 N.J. 319, 537 A.2d 652, certif. den. ___ U.S. ___, 109 S.Ct. 75, 102 L.Ed.2d 51 (1988). Rutgers is also not a state agency or instrumentality for purposes of the New Jersey Conflicts of Interest Law, N.J.S.A. 52:13D-12 to -27. In re Exec. Com'n on Ethical Stand., 116 N.J. 216, 561 A.2d 542 (1989). As Rutgers and UMDNJ are both state universities possessing equal autonomy and pursuing similar policies, they should be accorded the same status.
Yet, state universities may be classified as instrumentalities of the State for particular purposes. Rutgers, The State University v. Piscataway Township, 1 N.J. Tax 164 (Tax Ct. 1980) (Rutgers classified as a state agency so as to achieve immunity from local land use regulations and property taxation.); Rutgers, The State University v. Piluso, 60 N.J. 142, 286 A.2d 697 (1972) (State University termed an instrumentality of the State thereby immune from local zoning ordinances.). *195 The UMDNJ itself has expressly been made an instrumentality of the State so as to function as a public employer under the New Jersey Employer-Employee Relations Act, N.J.S.A. 34:13A-1 et seq. See, N.J.S.A. 18A:64G-6(s). Further, the university has been deemed a "public agency" within the meaning of the Public Employees' Retirement System Act, N.J.S.A. 43:15A-1 et seq. See, N.J.S.A. 18A:64G-12.[1]
In light of these legislative and judicial recognitions, the UMDNJ cannot be held to be a state administrative agency within the meaning of R. 2:2-3(a)(2). The university maintains financial and managerial independence from the State. Its autonomy is substantive rather than merely formal. The fact that the UMDNJ has expressly been made an instrumentality of the State for limited purposes not only fails to classify it as such for all purposes but also evidences an intent that the university shall remain independent unless expressly brought within the scope of the directive in issue. Thus, the independent, autonomous nature of the UMDNJ removes this action from the ambit of R. 2:2-3.
The above examination focuses on a statutory definition of an agency in light of the Legislature's intent in creating the UMDNJ. Yet, the requirements of Supreme Court Rule 2:2-3 would nonetheless remain inapplicable as the two judicially recognized exceptions to this rule would mandate trial level action. Foremost, jurisdiction will lie in the trial division where the authority of the state administrative agency is limited to a *196 particular locality. Baldwin Constr. Co. v. Essex County Board of Taxation, 27 N.J. Super. 240, 242, 99 A.2d 214 (App. Div. 1953); Colon v. Tedesco, 125 N.J. Super. 446, 449-450, 311 A.2d 393 (Law Div. 1973).
The classification of the agency being challenged as a state agency is irrelevant in determining whether the agency's authority is confined to a single locality. Baldwin Constr., supra, 27 N.J. Super. at 242, 99 A.2d 214 (County board of taxation an agency of the State); See also Estelle v. Bd. of Educ., 26 N.J. Super. 9, 97 A.2d 1 (App.Div. 1953) (Local board of education considered a state agency); State v. Mundet Cork Corp., 126 N.J. Eq. 100, 8 A.2d 105 (Ch. 1939) (Local board of health a state agency). While an agency may be "classified for most purposes as an agency of the State," actions would properly be brought in the Law Division under R. 2:2-3 and R. 4:69-1 where that agency's authority is limited to the county. Baldwin Constr. Co., supra, 27 N.J. Super. at 242, 99 A.2d 214. The proper focus, then, rests on the scope of authority exercised by the agency in applying this exception to R. 2:2-3.
This analysis further requires a determination of the true parties in interest in deciding whether a court will ultimately review a state administrative determination or a local agency action. Theodore v. Dover Bd. of Educ., 183 N.J. Super. 407, 413, 444 A.2d 60 (App.Div. 1982) (Trial level challenge to action of local board of education held to effectively question policies and decisions of state department of education. Any appeal from this latter agency reviewable in the Appellate Division.); DeNike v. Bd. of Trustees of State Employees Retirement System, 62 N.J. Super. 280, 291, 162 A.2d 891 (App.Div. 1960) (Court focused on the "identity of the defendant" in deciding which division should retain jurisdiction.).
Under this analysis various agencies have been held state administrative agencies necessitating any appeals directly to the Appellate Division pursuant to R. 2:2-3(a)(2). Ibid.; Ocean Cablevision Assoc. v. Hovbilt, Inc., 210 N.J. Super. 626, 634, *197 510 A.2d 308 (Law Div. 1986) (Law Division could not entertain challenges to the validity of rules and regulations adopted by the board of public utilities.); Union County Park Com'n v. County of Union, 154 N.J. Super. 213, 233, 381 A.2d 77 (Law Div. 1976), aff'd o.b. 154 N.J. Super. 125, 381 A.2d 33 (App.Div.), certif. den. 75 N.J. 531, 384 A.2d 511 (1977) (County park commission a creature of the State while still subject to local control.). Yet, other agencies have been found to be within the local agency exception to this rule. Mathesius v. Mercer County Improvement Auth., 177 N.J. Super. 626, 633, 427 A.2d 608 (App.Div. 1981) (County improvement authority could act only with local jurisdiction even if the agency could be termed a "State agency."); Florham Park Invest. Assocs. v. Madison Planning Bd., 92 N.J. Super. 598, 604, 224 A.2d 352 (Law Div. 1966) (Planning board with authority to effect actions within a municipality must be deemed a "local" agency.).
Decisions by the UMDNJ potentially effect many throughout the State. The board of trustees must act to further state policies and educational goals. N.J.S.A. 18A:64G-2. The State and indirectly the taxpayers are obliged to provide necessary financial assistance to ensure the meeting of these educational goals.
However, when the UMDNJ acts, it necessarily functions locally. The ability to negotiate municipal bond agreements and exercise powers of eminent domain pursuant to N.J.S.A. 18A:64G-16 are traditionally "local" functions effecting local interests. Further, the decision by the board of trustees to pay its employees in a particular method will effect only its employees and not all State employees as would a decision by an agency such as the Public Employee's Retirement System. Hence, the scope of decisions by the UMDNJ are necessarily limited to either a particular locality or group of individuals such as employees or students. Consequentially, final decisions by the UMDNJ are reviewable in the trial division as the university operates as a local agency.
*198 The second exception to the requirements of R. 2:2-3(a)(2) mandate trial level jurisdiction when the proposed administrative action has not been preceded by the creation of some agency record amenable to appellate review. State Farm v. Dept. of Pub. Advo., 227 N.J. Super. 99, 132, 545 A.2d 823 (App.Div. 1988); Montclair Tp. v. Hughey, 222 N.J. Super. 441, 446, 537 A.2d 692 (App.Div. 1987), app. den. ___ N.J. ___ (1988). Where the agency lacks the administrative machinery to entertain the types of claims being asserted a record for appeal cannot be produced. Pfleger v. N.J. Highway Dept., 104 N.J. Super. 289, 250 A.2d 16 (App.Div. 1968). Further, if a decision is rendered based on an agency's policies and regulations where traditionally some judicial type hearing is necessary, trial level action is mandated to provide a record for review. Frapaul Const. Co. v. Transp. Dept. of N.J., 175 N.J. Super. 84, 90-91, 417 A.2d 592 (App.Div. 1980) (Claims committee's denial of a contract claim based exclusively on departmental regulations without a hearing failed to produce an adequate record for appeal.).
Recently, the Appellate Division held that matters seeking to halt alleged breaches of public and private rights and not seeking review of administrative proceedings were properly instituted at the trial level. Montclair Tp. v. Hughey, 222 N.J. Super. 441, 448, 537 A.2d 692 (App.Div. 1987). In Hughey, plaintiffs challenged the DEP's designation of a site to temporarily store radium contaminated soil. Id. at 444-445, 537 A.2d 692. The litigation challenged neither the DEP's authority to act nor the process by which this agency attained its decision. Rather, plaintiffs asserted violations of their private and public rights to protect the environment as well as the health, safety and welfare of the communities. Ibid. Disposition of these type of claims required the exercise of trial court functions such as the gathering of evidence and the application of legal conclusions. Id. at 448, 537 A.2d 692; cf. Jersey City v. Dept. of Environ. Protection, 227 N.J. Super. 5, 14, 545 A.2d 774 (App.Div. 1988) (Appellate Division retained jurisdiction where *199 the facts were "clear" and legal issues sharply defined thereby obviating the need for trial court functions.).
In the present action, the record is not clear as to what process, if any, UMDNJ employed in deciding to pay employees in certain methods. This internal decision failed to be open to formal or informal challenges prior to its adoption. These factors augur in favor of requiring a judicial type hearing. See Frapaul Const. Co., supra, 175 N.J. Super. at 90, 417 A.2d 592. A record amenable to appellate review concerning the rationale behind implementation of this particular procedure would need to be developed.
The university merely incorporated various pay scales into the contract to guide the payment to employees of various ranks. Beyond negotiations at the time of implementation of these collective bargaining agreement provisions, no method to challenge the university action exists within the UMDNJ. Hence, the matter should be retained in the trial court to create a reviewable record.
Effectively, this litigation is an action in lieu of prerogative writs seeking to force the Board of Trustees of the UMDNJ to calculate and pay salaries in a certain fashion. All actions in lieu of prerogative writs to which R. 2:2-3 is inapplicable are cognizable in the Law Division. R. 4:69-1; Equitable Life Mort. v. N.J. Div. of Taxation, 151 N.J. Super. 232, 238, 376 A.2d 966 (App.Div. 1977), certif. den. 75 N.J. 535, 384 A.2d 514 (1977).
Actions in lieu of prerogative writs which seek to challenge the inaction of an agency or officer are properly instituted in the Law Division rather than the Appellate Division. Id. 151 N.J. Super. at 238, 376 A.2d 966. Yet, the cognizability of such a claim at the trial level is limited to where the inaction complained of is the nonperformance of mandated ministerial obligation. Ibid.; Pfleger v. N.J. State Highway Dept., supra. An act or duty is ministerial in nature if:

*200 [i]t is absolutely certain and imperative, involving merely the execution of a set task, and the law which imposes it prescribes and defines the time, mode and occasion of its performance with such certainty that nothing remains for judgment or discretion. [Ivy Hill Park v. Property Liability Ins. Guar. Ass'n., 221 N.J. Super. 131, 140, 534 A.2d 35 (App.Div. 1987), quoting Case v. Daniel C. McGuire, Inc., 53 N.J. Super. 494, 498, 147 A.2d 824 (Ch.Div. 1959)].
Under this definition, various agency actions have been held to be ministerial in nature and hence challenges to them properly cognizable in the Law Division. See Bruder v. Teachers' Pension & Annuity Fund, 27 N.J. 266, 277, 142 A.2d 225 (1958) (Pension fund's refusal to pay a retiree's accumulated deductions properly challenged in Law Division seeking performance of the ministerial acts of calculating amounts due and paying out same.); DeNike v. Bd. of Trustees of the State Retirement System, supra, 62 N.J. Super. at 290, 162 A.2d 891 (Appellate Division noted that the Law Division should have properly retained jurisdiction where relief sought was a "matter of simple arithmetic and ... payment ... involves no administrative discretion); Passaic v. Kingsley, 47 N.J. Super. 265, 270, 135 A.2d 877 (App.Div. 1957) (County tax board's promulgation of a table of aggregates pursuant to statutory direction was a ministerial duty involving no discretion.); Colon v. Tedesco, supra (Department of Labor and Industry's refusal to institute proceedings classified not as a discretionary act where statute cast in mandatory terms.).
It should be noted, however, that actions in lieu of prerogative writs may not be employed to circumvent Appellate Division jurisdiction. Schack v. Trimble, 28 N.J. 40, 45, 145 A.2d 1 (1958); Home Builder's Ass'n of Northern New Jersey v. Paramus Boro, 7 N.J. 335, 341-343, 81 A.2d 753 (1951); Jos. L. Muscarelle, Inc. v. State, by Transp. Dept., 175 N.J. Super. 384, 393-394, 418 A.2d 1310 (App.Div. 1980), certif. granted, 85 N.J. 484, 427 A.2d 576 (1980), app. dism. 87 N.J. 321, 434 A.2d 73 (1981). The right to review final administrative action of a state agency is generally vested in the Appellate Division regardless of the nomenclature under which an action is instituted. Degnan v. Nordmark & Hood Presentation, Inc., 177 *201 N.J. Super. 186, 191, 425 A.2d 1091 (App.Div. 1981) (Plaintiff sought declaratory ruling but action effectively sought review of final decision of state agency.). While this principle must be considered in determining whether acts are ministerial or discretionary in nature, it appears not to preclude Law Division consideration of enforcement of ministerial duties even where a state agency is involved. See Bruder v. Teachers' Pension & Annuity Fund, supra. (1958) (Ministerial acts by state-wide pension fund could be challenged in the Law Division); DeNike v. Bd. of Trustees of the State Retirement System, supra (Trial level action appropriate to seek enforcement of ministerial duties of state retirement system.).
In the instant action, plaintiffs seek to compel the full payment of salaries. The salary amounts have been established by contract and it would be a matter of "simple arithmetic" for this agency to comply with the mandates of the agreement. See, e.g., DeNike, 62 N.J. Super. at 290, 162 A.2d 891. The payment of the salary by UMDNJ is merely executing a set task with no discretion remaining for the board of trustees to exercise. See, e.g., Ivy Hill Park v. Property Liab. Ins. Guar. Ass'n., 221 N.J. Super. 131, 140, 534 A.2d 35 (App. Div. 1987).
Further, while UMDNJ may possess discretion to determine the method of payment either under the contract or relevant statute, it nonetheless possesses no discretion in determining whether to completely pay employees' salaries. Even if UMDNJ's method of payment constituted a long standing practice recognized under statutory interpretation of N.J.S.A. 52:14-15, no discretionary function would be exercised in determining the amount of salaries. See, Passaic v. Kingsley, supra.
Finally, this type of action should not be transferred to the salary adjustment committee ("SAC"). The annual appropriations act creates SAC which consists of the State Treasurer, Commissioner of Personnel and Director of the Division of *202 Budget and Accounting. Senate Bill 2800 (1989) at 147; see also L. 1988 c. 47 at 269. The current enabling law provides that the SAC:
[s]hall establish rules and regulations governing salary ranges and rates of pay. The implementation of such rules and regulations shall be made effective at the beginning of the biweekly pay period nearest July 1, 1989.... [Senate Bill 3800 (1989) at 147]
Generally, in interpreting the scope of authority possessed by an administrative agency, a court must analyze the powers expressly granted by statute or regulation as supplemented with those incidental powers reasonably necessary or appropriate to effectuate any specific delegation. New Jersey Guild of Hearing Aid Dispensers v. Long, 75 N.J. 544, 562, 384 A.2d 795 (1978); Professional Ass'n. v. Comm'r of Educ., 132 N.J. Super. 338, 345, 333 A.2d 566 (App.Div. 1975), aff'd sub. nom. Professional Ass'n v. Salary Adjustment Committee, 68 N.J. 444, 347 A.2d 793 (1975). Any administrative regulation must come within the "fair contemplation of the delegation of the enabling statute." New Jersey Guild of Hearing Aid Dispensers, supra 75 N.J. at 561-562, 384 A.2d 795, citing So. Jersey Airways v. Nat. Bank of Secaucus, 108 N.J. Super. 369, 383, 261 A.2d 399 (App.Div. 1970). Yet, any grant of authority must be liberally construed so as to permit the agency to accomplish its statutory responsibilities. New Jersey Guild of Hearing Aid Dispensers, supra 75 N.J. at 562, 384 A.2d 795. As a result, incidental powers must also be readily implied to fully effectuate legislative intent. Ibid.; In re Suspension of Heller, 73 N.J. 292, 303, 374 A.2d 1191 (1977).
However, regardless of the scope of authority of SAC to act, the ambit of that agency's action is limited to salaried state employees. Senate Bill 3800 (1989) at 147. The Legislature nonetheless has categorized UMDNJ employees as distinct from State employees for various purposes. See, e.g., N.J.S.A. 11A:6-6 (Civil Service Act expressly brings UMDNJ employees within its scope of coverage.); N.J.S.A. 11A:6-16 (UMDNJ employees to be considered "State employees" for limited purpose *203 of determining supplemental compensation.); See also In re Karcher, 190 N.J. Super. 197, 209, n. 4, 462 A.2d 1273 (App.Div. 1983) (Proposed financial plan for the State set salary limitations for all State employees subsequently expressly including UMDNJ employees within that definition.). The Supreme Court also has recently recognized the unique nature of these employees in holding that "[T]o characterize one of these scholars, for all purposes, as the equivalent of a State employee is to misperceive history and to traduce legislative purpose." In re Exec. Comm'n on Ethical Stand., 116 N.J. 216, 224, 561 A.2d 542 (1989).
Richard B. Standiford, the Director of the Division of Budget and Accounting, Comptroller of the State of New Jersey, the Director of the Office of Management and Budget, and a member of SAC asserts in a certification filed in this cause that UMDNJ employees are "not on the State's payroll." According to Standiford, they are not State employees.
Thus, in light of the independence of the university from the State's control, see N.J.S.A. 18A:64G-1 et seq., and the Legislature's distinct treatment of these employees, see N.J.S.A. 11A:6-1 et seq., the UMDNJ employees can not be characterized as State employees for purposes of SAC action unless expressly brought under its jurisdiction.
The board of trustees' motion to transfer this action to either the Appellate Division or the SAC must be denied. Jurisdiction properly lies in the Law Division and will be transferred to that court.
NOTES
[1] This express inclusion of the UMDNJ within the ambit of certain legislation, however, fails to classify it as less autonomous or independent. Garden State Pky. Emp. v. N.J. Highway Auth., 105 N.J. Super. 168, 170-171, 251 A.2d 463 (App.Div. 1969) (The fact that the highway authority was subject to the Public Employee's Retirement System and the Employer-Employee Relations Act did not bring the authority within the meaning of "any State board, body, agency or commission."); cf. Jacobs v. N.J. State Highway Auth., 54 N.J. 393, 400-402, 255 A.2d 266 (1969) (Highway authority deemed a state agency but only for the limited purpose of compliance with the Public Employee's Retirement System mandates.).