963 A.2d 339 (2008)
405 N.J. Super. 8
Michael O'ROURKE, Plaintiff-Respondent,
v.
CITY OF LAMBERTVILLE, a Municipal Corporation of the State of New Jersey; David Delvecchio, Mayor of the City of Lambertville; Steven Stegman, Council President of the City Council of the City of Lambertville; Cynthia Ege, Council Person, City of Lambertville; Ronald Pittore, Councilman, City of Lambertville; Frank Kramer, Councilman, City of Lambertville; and Bruce Cocuzza, Police Director, City of Lambertville, Defendants-Appellants.
No. A-0481-07T3
Superior Court of New Jersey, Appellate Division.
Argued September 23, 2008.
Decided October 31, 2008.
*340 John R. Lanza, Flemington, argued the cause for appellants (Lanza & Lanza, L.L.P., attorneys; Mr. Lanza, of counsel; John E. Lanza, on the brief).
James M. Mets, Woodbridge, argued the cause for respondent (Mets, Schiro & McGovern, L.L.P., attorneys; Mr. Mets, of counsel; Mr. Mets and Brian J. Manetta, on the brief).
Paul L. Kleinbaum, Newark, argued the cause for amicus curiae New Jersey State *341 Policemen's Benevolent Association (Zazzali, Fagella, Nowak, Kleinbaum & Friedman, attorneys; Mr. Kleinbaum, of counsel and on the brief).
Before Judges WEFING, PARKER and YANNOTTI.
The opinion of the court was delivered by
YANNOTTI, J.A.D.
Defendants appeal from a final judgment entered by the trial court on August 20, 2007, which reversed a decision by the City Council of the City of Lambertville removing plaintiff from his position as a police officer and ordered plaintiff's reinstatement. Defendants also appeal from an order entered on September 20, 2007, which denied their motion for reconsideration and awarded plaintiff attorneys' fees. For the reasons that follow, we affirm.

I.
The City's police department has ten full-time officers and five to six civilian employees. Bruce Cocuzza is the City's civilian Police Director, with administrative responsibility for the day-to-day operations of the department. Plaintiff was a sergeant first class and, as such, he was the department's highest ranking officer. Since 2001, plaintiff served as the department's Terminal Agency Coordinator (TAC) for the National Crime Information Center (NCIC) system, which is maintained by the Federal Bureau of Investigation and contains a wide array of law enforcement information.
On September 29, 2006, the City filed a preliminary notice of disciplinary action against plaintiff, charging him with: 1) conducting unauthorized and improper employee background investigations using the NCIC computer terminal, in defiance of a direct order by Cocuzza that no such investigations would be undertaken without his approval; 2) committing an act of insubordination by directing another officer to disregard Cocuzza's instructions regarding "a major incident;" 3) engaging in conduct subversive to the good order and discipline of the department by conducting the aforementioned background checks without the consent of the affected employees; 4) violating the department's policies and procedures governing background investigations; 5) neglect of duty for failing to ensure that an NCIC terminal operator had been "properly screened prior to being granted access to the system;" 6) failing to forward a serious complaint to the Internal Affairs Unit; and 7) engaging in conduct unbecoming a public employee. The notice indicated that plaintiff could be removed for, among other things, neglect of duty, insubordination, or willful violation of the department's rules and regulations. With the Mayor presiding, the Council conducted evidentiary hearings on the charges on January 9, 2007, February 13, 2007, and March 6, 2007.
Cocuzza testified that, in August 2006, he had a conversation with plaintiff regarding background checks for civilian employees. They discussed the transfer of an employee from City Hall to the department, on a temporary, part-time basis. According to Cocuzza, plaintiff told him that the employee would have to have a background check or be fingerprinted for security purposes. Plaintiff also told Cocuzza that all civilian employees had to be fingerprinted.
Cocuzza additionally testified that he told plaintiff that "no action" would be taken until Cocuzza received "direct written authorization from the control unit or somebody in authority," and he spoke "with the City Attorney to make sure" such action was appropriate. Cocuzza noted that some of the employees that they *342 were discussing were tenured employees, who had "between two and fifteen years of service."
Cocuzza also stated that he was concerned about the legality of any background checks of employees in good standing. Cocuzza said that he
would have ensured that once it was determined that there was a need, and really, we are only talking about fingerprinting, I grant you that, because that would have been the only thing needed to do to get the criminal history check, but it certainly required written consent from these people. That is something that the State Police standard requires as well. Now, to do otherwise is just certainly not appropriate.
Cocuzza further testified that the department has an established policy regarding background checks. According to Cocuzza, such checks are required for all employees appointed to the department. Cocuzza said that, when a person applies for appointment to the department, the individual is required to sign a release that allows the department to follow-up on all information developed in the background investigation. The applicant is fingerprinted and is informed that the background investigation results will remain confidential.
Cocuzza stated that, on August 25, 2006, he learned that plaintiff had performed background investigations of five civilian employees of the department, including himself. Cocuzza said that plaintiff had not received written authorization from anyone for these investigations. Cocuzza stated that plaintiff's actions contravened his "direct order."
Cocuzza also testified that, when he learned about the background checks, he directed plaintiff to submit a written report stating the authority upon which he acted. In his report, plaintiff asserted that he performed the checks under his authority as TAC officer. Plaintiff did not mention whether he had conferred with anyone in the State Police about the background checks.
Cocuzza initiated an investigation of plaintiff. He approached Sergeant Jeffrey Jones, the officer who was assigned to the department's Internal Affairs Unit, but Jones said he was uncomfortable undertaking the investigation because he had known plaintiff socially for seventeen or eighteen years. Jones suggested that the Prosecutor's Office conduct the investigation; however, Cocuzza decided to conduct the investigation himself.
In his investigative report, which is dated September 29, 2006, Cocuzza stated that, after plaintiff made a comment about fingerprinting civilian employees of the department, he told plaintiff "that such action" would not be taken without written direction from someone in authority, as well as guidance from the City's Attorney. Cocuzza wrote that plaintiff had been insubordinate and his actions constituted, among other things, a serious breach of discipline, a flagrant abuse of authority, and conduct unbecoming a public employee.
Cocuzza added that plaintiff's "misconduct" was "particularly egregious." He stated that plaintiff's actions were a "concerted effort on his part to exert his will and authority" over Cocuzza's authority, "with the ultimate goal being to achieve de facto leadership of the department; a virtual coup of sorts." Cocuzza wrote that plaintiff's behavior was "extremely malignant to a para-military organization such as a police department."
Cocuzza's secretary, Sally Lelie, testified that she was present when Cocuzza and plaintiff discussed the fingerprinting and background checks of the department's civilian *343 employees. Lelie stated that the conversation began when someone mentioned that one of the City's employees was going to be re-assigned to the department, and plaintiff mentioned fingerprinting and doing criminal histories and background checks of the employees. Lelie testified that Cocuzza told plaintiff that he should get "proper documentation from the State Police," and Cocuzza would review the matter with the City Attorney to ensure that the investigations were lawful.
Lelie additionally testified that she reported to work on August 25, 2006. Cocuzza had taken vacation leave that day. She noticed a report that plaintiff had prepared concerning background checks on employees. Lelie recalled Cocuzza's directive. Lelie spoke to Cocuzza that day on another matter and, during the conversation, she mentioned plaintiff's report. Lelie stated that plaintiff had performed a background check on her without her authorization. Lelie said that she felt "[u]pset, angry, hurt, [and] betrayed" by plaintiff's actions.
Plaintiff testified that, as TAC officer, he is responsible for overseeing the operation of the NCIC terminal. He stated that a person with a felony conviction is not permitted to have "access" to the terminal. Plaintiff asserted that an individual would have to be fingerprinted before being authorized to "log on" to the NCIC terminal.
Plaintiff further testified that, on either August 10th or 11th, he had a conversation with Cocuzza and Lelie. They were discussing the transfer of one of the City's employees from City Hall to the police department. Plaintiff told Cocuzza that a background check of the employee would have to be done. Cocuzza said that, if a background check was performed on the new worker, she might think that she was being singled out. According to plaintiff, Lelie stated that the department should do background checks of all of its civilian employees. Plaintiff said that he agreed.
Cocuzza asked plaintiff whether the department's policy on background investigations applied to its civilian employees. Plaintiff replied that he did not believe that the policy applied and, further, that it had never been applied to civilian workers. Cocuzza asked plaintiff to review the policy. Cocuzza also said that he wanted to discuss the matter with the City Attorney.
Plaintiff testified that on August 23rd, Lelie asked him to provide the new employee with a "log on" for the department's in-house computer system. Plaintiff told Lelie he did not think that would be proper unless the employee had a "background," and he refused to provide the employee with a "log on" unless he was specifically ordered to do so.
Plaintiff stated that Lelie informed him that the new employee had "access" to the NCIC terminal. He went to speak with Cocuzza, who told him that "nothing had been done" on the background check for the new worker. Plaintiff told Cocuzza that he needed to obtain fingerprints for the employee.
Plaintiff said that, even though the employee had not been given a "log on", he believed that she had "access" to the terminal and had to be fingerprinted. Cocuzza and Lelie stated that they had never been fingerprinted. Plaintiff asserted that "everyone is going to have to submit fingerprints." Cocuzza replied that he would not submit fingerprints unless he received "something" from the State Police indicating that they were required.
Plaintiff told Cocuzza that he would contact the "Control Unit" at the State Police. He called Sergeant Ron Rivera at the State Police and explained the situation to him. According to plaintiff, Rivera said that anyone who has "access" to the terminal *344 has to be fingerprinted. Plaintiff testified that he intended to discuss the matter with Cocuzza that day but he did not do so because Cocuzza was very upset about another matter.
Cocuzza was out sick the next day, August 25th. Plaintiff testified that he made a copy of the State's security policy, put it in a binder, and gave it to Lelie. Plaintiff explained that, according to the policy, certain computer databases had to be checked before fingerprints were submitted. The databases included the State's computerized criminal histories system; the State's "wanted person" system; the NCIC "wanted person" file; the National Law Enforcement Telecommunication System; and the Criminal History Record Information for certain states.
Plaintiff stated that he did not take fingerprints of any of the department's civilian workers because Cocuzza told him that he would not submit to being fingerprinted. Plaintiff "took that to mean that" he should not "ask anyone else" for their fingerprints. Plaintiff conceded, however, that he did "look ups" on five employees, including Cocuzza, on each of the databases identified in the State's security policy. Plaintiff also performed a five-region driver's license check on Cocuzza, and one-region searches on the other employees. Plaintiff insisted that, without these types of "look ups and fingerprinting," the department was not in compliance with the State's security policy.
Plaintiff also testified that in his "look ups" he learned that there was an outstanding arrest warrant for one of the employees. Plaintiff said that he informed Officer Memolo and Sergeant Brown of the warrant, and "detailed" Memolo to go to City Hall and arrest the individual. The employee had already left for the day, and Memolo served the warrant the next day that the employee came to work.
On April 4, 2007, the Council issued its decision in the matter. The Council found that plaintiff was not guilty of telling an employee to ignore one of Cocuzza's orders, and failing to comply with the department's procedures for background checks. The Council determined, however, that plaintiff was guilty of insubordination, failing to comply with an order of a superior, neglect of duty, failing to notify the Internal Affairs Unit of criminal activity, and conduct unbecoming a public employee. The Council ordered plaintiff's removal from his position.

II.
Thereafter, plaintiff commenced this action in the trial court seeking de novo review of the City's action pursuant to N.J.S.A. 40A:14-150. Plaintiff alleged that his removal violated N.J.S.A. 40A:14-147 because it was not for just cause. He asserted that the City had violated a clear mandate of public policy by demoting and terminating him for taking action to bring the City into compliance with State and Federal law.
He further claimed that Cocuzza exceeded his authority by conducting the investigation into the charges and, in doing so, violated the department's internal affairs procedures, the Attorney General's Guidelines, and N.J.S.A. 40A:14-181. Plaintiff also alleged that his right to due process was violated by defendants' actions, and claimed that termination was too severe a penalty, and violated principles of progressive discipline. Plaintiff sought reinstatement to his position and other relief.
The trial judge issued a written opinion dated August 20, 2007. The judge stated that, after reviewing the hearing transcripts and considering the arguments of counsel,

*345 except for the fact that [p]laintiff was specifically prohibited from fingerprinting civilian employees, ... the exact parameters of Cocuzza's verbal order are not entirely clear. If that was the only prohibition, then [p]laintiff did not violate Cocuzza's order because he did not fingerprint anyone. On the other hand, one could argue that Cocuzza's order prevented [p]laintiff from performing any form of background check on civilian employees, and that [p]laintiff willfully violated this prohibition on August 25, 2006.
The judge found, however, that regardless of whether plaintiff violated Cocuzza's order, or any other department rule, the investigation was not conducted in conformity with the rules and regulations adopted by the City and the Attorney General's Guidelines. The judge concluded that the City's failure to adhere to the Attorney General's Guidelines "resulted in a deprivation of [p]laintiff's due process rights." The judge accordingly filed an order on August 20, 2007, which dismissed the charges against plaintiff, and reinstated plaintiff to his position with back pay.
On September 4, 2008, defendants filed a motion for reconsideration and for a stay of the judgment pending appeal. The judge heard the motion on September 20, 2007, and filed a written opinion that day, in which he found that defendants had not provided a basis for reconsideration for his decision. The judge also found no basis for a stay of his order pending appeal. The judge entered an order on September 20, 2007, denying defendants' motion. The order also stated that plaintiff was entitled to attorneys' fees and costs but did not award plaintiff a specific amount of fees and costs. The order states that defendants are required to "pay for all attorney's fees and costs associated with representing [plaintiff] in this matter pursuant to N.J.S.A. 40A:14-155[.]"
Defendants filed a notice of appeal on September 27, 2008. On October 29, 2007, we entered an order granting defendants' motion for a stay pending appeal.

III.
On this appeal, defendants argue that the judge erred by finding that plaintiff was denied due process. Defendants maintain that plaintiff's removal was warranted in the circumstances, and the City was not required to apply progressive discipline in this case.
Initially, we note our disagreement with the trial judge's conclusion that plaintiff was denied his constitutional right to procedural due process. In his August 20, 2007 opinion, the trial judge said that plaintiff's constitutional rights were violated by Cocuzza's failure to follow the City's rules that govern the disciplinary process for police officers who allegedly engaged in misconduct.
In our judgment, Cocuzza's failure to comply with the City's rules does not rise to the level of a denial of plaintiff's constitutional rights to due process. Nevertheless, we are convinced that Cocuzza's failure to comply with the City's rules warrants affirmance of the trial court's order reinstating plaintiff to his position in the City's police department.
The rules at issue here were adopted pursuant to N.J.S.A. 40A:14-181. The statute "requires [e]very law enforcement" agency in this State to "adopt and implement guidelines" that are "consistent with the guidelines" that have been promulgated by the Attorney General, through the Police Bureau in the Division of Criminal Justice. Ibid.
The Attorney General's Guidelines state that every law enforcement agency must *346 establish an Internal Affairs Unit "to establish a mechanism for the receipt, investigation and resolution of complaints of officer misconduct." The Internal Affairs Unit "will consist of those personnel of the department assigned to internal affairs by the [agency's] law enforcement executive."
The Guidelines detail the procedures that must be followed in the investigation of complaints concerning law enforcement officers, including "serious rule infractions." Serious complaints of the sort involved in this case must be referred "to the [I]nternal [A]ffairs [U]nit" and investigated by "an internal affairs investigator."
The Guidelines additionally state that the internal affairs investigator "must strive to conduct a thorough and objective investigation without violating the rights of the subject officer or any other law enforcement officer." According to the Guidelines, the investigator must submit "an objective investigation report." The report must "[recount] all of the facts of the case, and a summary of the case along with conclusions for each allegation and recommendations for further action."
On May 19, 1997, the City Council adopted rules governing the operations of the City's police department, which include rules pertaining to disciplinary actions against members of the department. The City's rules provide in part that:
[i]nvestigators assigned to an investigation are the direct representatives of the Director of Police and, as such, shall receive the cooperation of all members of the Department while conducting their investigations. The sole responsibility of the investigator shall be the gathering of all the facts regarding the allegations. In so doing, [the investigator] must be objective and thorough when submitting his report. His opinions, conclusions, or personality shall not be interjected into the case. By adhering to the foregoing principles, the case can be concluded with optimum fairness for all persons concerned.
The City has also adopted rules that provide for the establishment of an Internal Affairs Unit within the department, which consists "of those members of the department [who are] assigned to the Internal Affairs function by the Police Director." The goal of the unit "is to insure that the integrity of the department is maintained through a system of internal discipline where fairness and justice [is] assured by [an] objective, impartial investigation and review."
The City's rules further provide that the department's Internal Affairs Unit is responsible for the investigation and review of all allegations of misconduct by a member of the police department. The rules state, "Members assigned to the Internal Affairs Unit or function come under the direct authority of the Police Director reporting directly to the Police Director." The rules require the Internal Affairs Unit to investigate complaints of misconduct, and submit a report to the Police Director summarizing the evidence and suggesting a possible resolution of the complaint.
The City's rules additionally provide that "[t]he Police Director, upon completion of the review of the report, supporting documentation and information gathered during any supplemental investigation, shall direct whatever action is deemed appropriate." If the complaint is sustained, and a decision is made to prefer charges, "the Police Director shall prepare, sign, and serve charges upon the accused officer or employee."
In this matter, it is undisputed that Cocuzza failed to adhere to the City's rules when he investigated his own allegations that plaintiff had engaged in "serious" misconduct. As noted, Cocuzza undertook the *347 investigation himself, even though he was not a member of the department assigned to the Internal Affairs Unit. Clearly, Cocuzza was not authorized to investigate the matter.
According to the City's rules, allegations of serious misconduct must be investigated by a member of the department who has been assigned to the Internal Affairs Unit. The results of the investigation are ultimately presented to the Police Director but, under the City's rules, the responsibility for the investigation rests with the Internal Affairs Unit, not with the Director.
Moreover, the City's rules require that the investigation be undertaken in a fair and objective manner. Because the principal allegation here was that plaintiff acted in defiance of one of Cocuzza's directives, and because Cocuzza was himself the focus of one of plaintiff's allegedly unauthorized background checks, Cocuzza could not be expected to perform the kind of objective investigation required by the Attorney General's Guidelines and the City's rules.
We recognize that initially Cocuzza asked Sergeant Jones to investigate the allegations, and Jones refused due to his personal relationship with plaintiff. However, Jones' recusal did not provide Cocuzza with authority to investigate the matter. Cocuzza should have either found another officer to undertake the investigation or asked the County Prosecutor to investigate.
In addition, the Attorney General's Guidelines mandate that the investigation report be objective. In furtherance of that requirement, the City's rules require that the investigator be "objective and thorough when submitting his report." The rules also state that the investigative report must not contain the investigator's personal "opinions, conclusions or personality." Here, Cocuzza wrote a report that was not objective. Moreover, the report contains his "opinions, conclusions and personality."
The City argues, however, that the deficiencies in the investigative process are trivial and were cured by the evidentiary hearing provided by the Council. We disagree. A fair and objective investigation of the allegations is an essential part of the disciplinary process envisioned by the Attorney General's Guidelines and established by the City's rules.
Indeed, the City's rules emphasize the need to adhere to the prescribed procedures to ensure "optimum fairness for all persons concerned." Cocuzza's lack of objectivity in the investigation undermined the fairness of the process at its inception and tainted the entire proceeding. Given the strong views that Cocuzza expressed in his report, and his perception that plaintiff was engaged in a "coup," it was more likely than not that the Council would uphold Cocuzza's charges.
In support of its contention that the deficiencies of the investigation were cured by the evidentiary hearing, the City relies upon Ensslin v. Twp. of No. Bergen, 275 N.J.Super. 352, 361, 646 A.2d 452 (App. Div.1994), certif. denied, 142 N.J. 446, 663 A.2d 1354 (1995). In that case, the Township failed to provide the employee with a departmental hearing regarding its proposed notice of disciplinary action within the time required by the administrative regulation. Id. at 361, 646 A.2d 452. We concluded that the procedural irregularity was cured by the subsequent hearing held before the Civil Service Commission. Ibid. (citing In re Darcy, 114 N.J.Super. 454, 461, 277 A.2d 226 (App.Div.1971)).
Notwithstanding the City's arguments to the contrary, the Ensslin case does not support its argument. Ensslin only involved an inconsequential procedural delay. *348 The Ensslin decision cannot be read to mean that any irregularity in the disciplinary process, no matter how serious, can be cured by a subsequent evidentiary hearing.
The City also relies upon In re Carberry, 114 N.J. 574, 556 A.2d 314 (1989). There, a member of the Division of State Police was charged with violating the Division's rules by using a controlled dangerous substance. Id. at 580-81, 556 A.2d 314. The officer pled not guilty and the Superintendent of the State Police conducted the hearing. Id. at 581, 556 A.2d 314. The Superintendent found that the officer violated the Division's rules and terminated his employment. Id. at 582, 556 A.2d 314.
On appeal, the officer argued, among other things, that he was denied administrative due process because he did not have a hearing before a neutral and unbiased decision maker. Id. at 584, 556 A.2d 314. The Court rejected that contention, noting that "actual bias" was the "touchstone of disqualification." Id. at 586, 556 A.2d 314. The Court found no evidence that the Superintendent was actually biased against the officer. Ibid.
The City's reliance on Carberry is misplaced. As we stated previously, this case does not involve a violation of plaintiff's constitutional right to due process. It involves, instead, a municipality's failure to adhere to rules adopted pursuant to N.J.S.A. 40A:14-181 to implement the Attorney General's Guidelines. Our decision turns upon the fact that Cocuzza undertook an investigation that he was not authorized to undertake, failed to conduct the investigation in a fair and objective manner, and issued a report recommending disciplinary action that is replete with his opinions, conclusions and personality.
In summary, we are convinced that when a law enforcement agency adopts rules pursuant to N.J.S.A. 40A:14-181 to implement the Attorney General's Guidelines, the agency has an obligation to comply with those rules. Because it failed to do so, and because the deficiencies tainted the disciplinary process, the City's decision to remove plaintiff from his position cannot stand.
We therefore affirm the trial court's judgment and vacate the stay of the judgment previously entered.