**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2930-16T1

S.B.,

     Appellant,

v.

STATE OF NEW JERSEY, NEW
JERSEY TRANSIT CORPORATION,
NEW JERSEY TRANSIT POLICE
DEPARTMENT, and NEW JERSEY
TRANSIT POLICE CHIEF
CHRISTOPHER TRUCILLO,

     Respondents.

_____

Argued September 25, 2018 – Decided April 12, 2019

Before Judges Rothstadt and Natali.

On appeal from the New Jersey Transit Police Department, New Jersey Transit Corporation, Agency Number II-2016-024.

Catherine M. Elston argued the cause for appellant (C. Elston & Associates, LLC, attorneys; Catherine M. Elston, of counsel and on the briefs).

Michael S. Rubin argued the cause for respondents (Gurbir S. Grewal, Attorney General, attorney; Jason W. Rockwell, Assistant Attorney General, of counsel; Michael S. Rubin, Deputy Attorney General, on the brief).

PER CURIAM

S.B.[1] appeals from the New Jersey Transit Corporation's (NJT) decision to terminate his employment with NJT's Police Department without a hearing. Prior to discharging S.B., NJT filed disciplinary charges against him based on allegations that he made racially and sexually offensive remarks on duty. Because we conclude S.B. (1) was an at-will, probationary employee under the collective negotiations agreement (CNA) governing the parties' employment relationship that permitted NJT to fire him "without cause and for any reason," and (2) lacked a property interest in continued public employment, we affirm NJT's decision to discharge S.B. pursuant to the CNA without affording him a pre-discharge hearing. But, we remand to NJT for a post-discharge hearing consistent with S.B.'s liberty interest in clearing his name and removing the allegations underlying the disciplinary charges from his employee personnel file because those charges imperil S.B.'s ability to secure future public employment.

---

[1] We refer to the appellant by his initials to protect the confidentiality of these proceedings.

I.

NJT hired S.B. as a police officer on December 10, 2014.  The CNA governing their employment relationship was negotiated by NJT and the Police Benevolence Association, S.B.'s former union.  Under the terms of the CNA, S.B. was hired subject to a probationary period of employment that was extended three times, and which was ultimately set to expire on June 10, 2017.  The CNA provides that NJT police officers serving probationary periods of employment "may be discharged with or without cause and for any reason without recourse to the grievance/arbitration provisions" of the CNA.

By letter dated October 27, 2016, NJT Police Deputy Chief Laura Hester advised S.B. that NJT had received a complaint about actions he allegedly committed on July 29, 2016.  The October 2016 letter also advised S.B. that a member of the Office of Professional Standards would contact him to schedule an interview to discuss the allegations.  Following that interview, NJT issued disciplinary charges and specifications against S.B. on or about January 4, 2017, charging him with conduct unbecoming an officer, discourtesy, and unsatisfactory performance.  The charges alleged S.B. made racially and sexually offensive remarks that were corroborated by multiple witnesses.  Though the charges maintained S.B. behaved in a similar manner on multiple

occasions, NJT identified only the July 29, 2016 incident by date. The charges also stated that S.B. "admitted to the above allegations during his interview," a statement S.B. claims is false.

According to the January 4, 2017 charges, S.B. was subject to major discipline ranging from a six-day suspension to employment termination, and was required to plead guilty or not guilty. NJT Police Chief Christopher Trucillo served S.B. with the charges on January 6, 2017.

By letter dated January 27, 2017, S.B. pleaded not guilty to all of the charges, requested a hearing, and demanded discovery. According to NJT, on February 3, 2017, Trucillo "elected not to pursue" the disciplinary proceedings and, instead, terminated S.B.'s employment effective immediately. The rationale provided in a February 3, 2017 termination letter was that S.B.'s employment was "at will" and that NJT had the "right to terminate" him "at any time, in [NJT's] sole discretion, with or without cause" and "for any reason without recourse to the grievance/arbitration provisions" of the CNA. S.B. maintains the "charges, and the investigatory documents underlying the charges, remain in [his] employment record with [NJT] to this day," a contention that NJT does not directly dispute.

4

In a February 10, 2017 letter, S.B.'s counsel demanded that Hester immediately reinstate him to his position and that he receive back-pay for the time elapsed since his termination. The February 10, 2017 letter also advised that the circumstances of S.B.'s discharge warranted procedural due process protections. In a March 1, 2017 response, NJT stated that as a probationary employee, S.B.'s "employment was completely at-will," he "could be discharged without recourse," and "[h]e was not entitled to the grievance/arbitration protections of the CNA." This appeal followed.

II.

NJT raises two jurisdictional challenges. First, NJT argues that this case is merely a contract dispute and the PBA could have pursued other administrative relief on S.B.'s behalf, so the appeal should be dismissed for failure to exhaust administrative remedies. This argument is meritless. The discharge letter NJT sent to S.B. states that he may not invoke any administrative relief provided for in the CNA, and NJT further advised him that he "could be discharged without recourse" and that "[h]e was not entitled to the grievance/arbitration protections of the CNA."

Next, NJT contends its "discharge of S.B. without a hearing was not a final agency action appealable under [Rule] 2:2-3(a)(2)" because its "decision

to discharge S.B. did not follow an adjudicatory proceeding where a record was developed," which NJT maintains is a prerequisite to final agency actions or decisions pursuant to Frapaul Construction Co. v. Transportation Dep't of New Jersey, 175 N.J. Super. 84 (App. Div. 1980).  We disagree.

Rule 2:2-3(a)(2) provides that "appeals may be taken to the Appellate Division as of right . . . to review final decisions or actions of any state administrative agency or officer . . . ."  In Frapaul, the New Jersey Department of Transportation (DOT) awarded a contract to the petitioner, a construction company, for construction work after Frapaul, an independent contractor, placed the winning bid on a procurement contract.  Id. at 87-88.  After a dispute arose as to payment due under the contract, Frapaul submitted a claim to DOT pursuant to the New Jersey Contractual Liability Act, N.J.S.A. 59:13-1 to -10.  Frapaul, 175 N.J. Super. at 89.  DOT processed the claim through its Claims Committee, which gathered facts, considered Frapaul's claim, and decided to deny it, a decision the DOT's Deputy Commissioner approved.  Id. at 87-89.  Frapaul appealed and we held:

> it [is] clear that the conclusions of the DOT Claims
> Committee are not final decisions within contemplation
> of [Rule] 2:2-3(a)(2).  The Claims Committee does not
> provide a judicial type of hearing such as is necessary
> to adjudicate a construction contract controversy.  Its
> proceedings do not provide for discovery nor do they

6

provide the DOT an opportunity to present its own witnesses or the contractor the right to confront and cross-examine the DOT personnel. The witnesses who are presented to the Committee by the contractor do not testify under oath and, in addition, no evidence is introduced or marked.

[Id. at 91 (citations omitted).]

In stark contrast to the DOT Claims Committee's inability to provide "a record adequate for appellate review of construction contract claims," ibid., NJT concedes it could have "elected to hold a disciplinary hearing," but simply chose not to. Further, the constitutionality of NJT's decision to discharge S.B. without a hearing, as opposed to a complex construction contract dispute, is capable of adjudication on this record. Thus, S.B. properly appealed from that final decision "as of right" under Rule 2:2-3(a)(2).

III.

Turning to the merits of this appeal, S.B. maintains NJT unconstitutionally deprived him of his interests in property and liberty by charging him with stigmatic allegations then terminating his employment without a pre-discharge hearing. In this regard, S.B. argues that N.J.S.A. 27:25-15.1c entitled him to continued public employment despite his probationary status under the CNA, and claims NJT's actions in charging him with racially and sexually offensive conduct affected his liberty interests. According to S.B., NJT unlawfully

deprived him "of the right to invoke certain statutory defenses" related to his discharge by denying him a hearing.

In response, NJT contends the CNA "controls and allows [NJT] to discharge probationary employees with or without cause and without a disciplinary hearing." NJT also argues that by initially issuing disciplinary charges, it did not waive any right to discharge S.B. pursuant to the CNA.

Our review of final agency action is limited, and the agency's decisions typically will stand "in the absence of a showing that it was arbitrary, capricious or unreasonable, or that it lacked fair support in the evidence." In re Carter, 191 N.J. 474, 482 (2007) (quoting Campbell v. Dep't of Civil Serv., 39 N.J. 556, 562 (1963)). "[O]n questions of law, such as whether" a public employee "was deprived of due process," however, "we are not bound by the agency decision and will review the agency's determination de novo." George v. City of Newark, 384 N.J. Super. 232, 238–39 (App. Div. 2006).

### A.

Our Federal and State Constitutions provide procedural protections for substantive interests in life, liberty, and property. U.S. Const. amend XIV; N.J. Const. art. 1, § 1. To sustain his claim that he has a protectable property interest in continued public employment, S.B. must show "more than a unilateral

A-2930-16T1

expectation of it. He must, instead, have a legitimate claim of entitlement to it." Bd. of Regents v. Roth, 408 U.S. 564, 577 (1972). Whether S.B. has a legitimate claim of entitlement to, and thus a protectable property interest in, continued public employment depends on whether a statute, rule, contract, or other mutual understanding "secured his interest in employment" as an officer of NJT's Police Department. See id. at 577-78; see also Leis v. Flynt, 439 U.S. 438, 442 (1979) (holding that "[a] claim of entitlement under state law, to be enforceable, must be derived from statute or legal rule or through a mutually explicit understanding"); Bishop v. Wood, 426 U.S. 341, 344 (1976) (recognizing "the sufficiency of the claim of entitlement must be decided by reference to state law").

In New Jersey, "in the absence of a contrary agreement, an employee is hired at-will . . . ." Bernard v. IMI Sys., Inc., 131 N.J. 91, 96 (1993). Here, S.B. does not dispute his probationary status under the CNA, pursuant to which NJT, "with or without cause and for any reason," could terminate his employment. Indeed, S.B. does not attribute any significance to that negotiated provision of the CNA. Rather, S.B. claims the CNA "is irrelevant as it serves only to preclude [him] from appealing his termination administratively, specifically, through the grievance procedure which ends in arbitration."

A-2930-16T1

S.B.'s at-will status ordinarily would foreclose further inquiry into whether he had a protectable property interest because "a holding that as a matter of state law the employee 'held his [or her] position at the will and pleasure of the [government]' necessarily establishes that he [or she] had no property interest." Bishop, 426 U.S. at 345 n.8; see also Grexa v. State, Dep't of Human Servs., 168 N.J. Super. 202, 207 (App. Div. 1978) (acknowledging that "a temporary employee without fixed term . . . , unprotected by Civil Service or by any statutory tenure, contractual commitment or collective negotiations" has "no property interest implicated such as to invoke the due process shield").

But, S.B. argues that he has a "statutory right to continued employment" pursuant to N.J.S.A. 27:25-15.1c, notwithstanding his status as a probationary employee under the CNA. The statute provides, in pertinent part:

> A person shall not be removed from employment or a position as a police officer of [NJT's Police Department] pursuant to section 2 of P.L.1989, c. 291 (C.27:25-15.1), or suspended, fined, or reduced in rank for a violation of the internal rules and regulations established for the conduct of employees of [NJT's Police Department], unless a complaint charging a violation of those rules and regulations is filed no later than the [forty-fifth] day after the date on which the person filing the complaint obtained sufficient information to file the matter upon which the complaint is based. A failure to comply with this section shall require a dismissal of the complaint.

[N.J.S.A. 27:25-15.1c.]

There are no reported cases interpreting this statute. S.B. maintains the statute provides all NJT officers with "a reasonable expectation of continued employment if the rules and regulations are adhered to," and that "[p]robationary employees are not exempted from the statute." According to S.B., "[t]he statute expressly confers the constitutional procedural due process right of notice of charges before suspension, fine, demotion or removal," and "such notice inherently includes an opportunity to be heard . . . ; otherwise, the notice requirement would be superfluous[]." S.B. further contends "[t]he statute precludes removal or suspension without these constitutional protections," and that "[t]he statute . . . creates a property right to continued employment by requiring adherence to the department's rules and regulations, or face suspension or removal." Finally, S.B. claims the statute is analogous to the statutes held to create property interests in In re Carberry, 114 N.J. 574 (1989), and Capua v. City of Plainfield, 643 F. Supp. 1507 (D.N.J. 1986).

Ascribing ordinary meaning to the statute's plain language, In re Young, 202 N.J. 50, 63 (2010), we agree with S.B. that the statute applies to him regardless of his status as a probationary officer, and is not limited, as NJT maintains, to "permanent" officers. By its plain terms, N.J.S.A. 27:25-15.1c

11

applies to any "person" who is employed as a police officer for NJT, which includes a person serving a probationary term of employment.

To the extent the statute applies to S.B., it only applies to him pursuant to its terms – if S.B. is discharged for a violation, he must first receive a charging document. The question remains whether the statute "secured his interest in employment" as an officer of NJT's Police Department, i.e., whether it created a protectable property interest. See Roth, 408 U.S. at 577-78.

S.B.'s first argument that the statute creates a property interest by providing NJT officers with "a reasonable expectation of continued employment if the rules and regulations are adhered to" overlooks the well-settled law that "a unilateral expectation" does not create a protectable property interest. See Roth, 408 U.S. 577; see also Nicoletta v. N. Jersey Dist. Water Supply Comm'n, 77 N.J. 145, 154 (1978) (recognizing "the key concept is 'entitlement,'" when deciding whether an asserted property interest triggers constitutional protections).

As for S.B.'s claims that "[t]he statute expressly confers the constitutional procedural due process right of notice of charges before suspension, fine, demotion or removal," and that the statute "precludes removal or suspension without these constitutional protections," the statute's procedural protections

apply only when the adverse employment action is "for a violation of the internal rules and regulations . . . ." N.J.S.A. 27:25-15.1c.[2] Further, "[t]he fact that state law may grant procedural protections to an at-will employee does not transform [the] interest in continued employment into a property interest protected by the Due Process Clause." Thomas v. Town of Hammonton, 351 F.3d 108, 113 (3d Cir. 2003). Indeed,

> The point is straightforward: the Due Process Clause provides that certain substantive rights – life, liberty, and property – cannot be deprived except pursuant to constitutionally adequate procedures. The categories of substance and procedure are distinct. Were the rule otherwise, the Clause would be reduced to a mere tautology. "Property" cannot be defined by the procedures provided for its deprivation any more than can life or liberty.
>
> [Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 541 (1985).]

---

[2] Although S.B. challenges whether NJT in fact discharged him for a violation of NJT's rules, there is no serious dispute that NJT had the right to discharge S.B. "without cause and for any reason" pursuant to the CNA, and in the February 3, 2017 termination letter, NJT invoked the CNA's at-will provision when discharging him. Indeed, S.B. acknowledges that the "basis of [his] removal" as stated in the termination letter was "not the charges," but was S.B.'s "probationary status." Further, S.B. does not challenge the validity of the CNA.

A-2930-16T1

Accord Town of Castle Rock, Colo. v. Gonzales, 545 U.S. 748, 764 (2005) (deciding that "an entitlement to nothing but procedure" is "inadequate . . . [to] be the basis for a property interest" (citation omitted)).

An examination of the statutes held to create property interests in Carberry and Capua demonstrates that N.J.S.A. 27:25-15.1c does not entitle S.B. to continued public employment. The statute interpreted in Carberry provides in pertinent part:

> Except as provided in section 3 of P.L.1983, c.403 (C.39:2-9.3), any member of the Division of State Police who has or shall hereafter serve continuously as such member for a period of five years shall thereafter continue in such membership during good behavior.
>
> [N.J.S.A. 53:1-8.1.]

The difference between the statute in Carberry and N.J.S.A. 27:25-15.1c is clear. The statute in Carberry expressly confers upon five-year officers the right to "continue in such membership during good behavior." N.J.S.A. 53:1-8.1. Thus, as the Court "recogniz[ed]," N.J.S.A. 53:1-8.1 legitimately entitles five-year officers to "continued employment" during good behavior. Carberry, 114 N.J. at 583. By contrast, N.J.S.A. 27:25-15.1c only establishes procedures that must be followed when NJT takes adverse employment action against an employee for a violation of the internal rules and regulations. Further, N.J.S.A.

27:25-15.1c is silent as to removals not "for cause," during an employee's probationary period pursuant to a negotiated agreement.

In Capua, the court addressed N.J.S.A. 40A:14-19, which provides in pertinent part:

> Except as otherwise provided by law no permanent member or officer of the paid or part-paid fire department or force shall be removed from his [or her] office, employment or position for political reasons or for any cause other than incapacity, misconduct, or disobedience of rules and regulations . . . , nor shall such member or officer be suspended, removed, fined or reduced in rank . . . except for just cause as herein above provided and then only upon a written complaint, setting forth the charge or charges as against such member or officer. . . . . A failure to substantially comply with said provisions as to the service of the complaint shall require a dismissal of the complaint.

That statute expressly conditions any and all removal of a permanent officer upon there being "just cause . . . and then only upon" an adequate complaint being filed. N.J.S.A. 40A:14-19. The language prohibiting removal "except for just cause" legitimately entitles the permanent fire department personnel to continued employment unless there is "just cause" to discharge them. See Logan v. Zimmerman Brush Co., 455 U.S. 422, 430 (1982) (declaring that "[t]he hallmark of property . . . is an individual entitlement grounded in state law, which cannot be removed except 'for cause'"). The additional language

15

providing that removal can occur only upon a written complaint being filed establishes the procedure designed to protect that property interest. See Castle Rock, 545 U.S. at 772 (Souter, J., concurring) (discussing "the distinction between property protected and the process that protects it").

By contrast, N.J.S.A. 27:25-15.1c does not state that NJT's police officers may be removed only for a violation of the internal rules and regulations. Instead, N.J.S.A. 27:25-15.1c establishes procedures that must be followed – the timely filing of a complaint – when adverse employment action is taken "for a violation of the internal rules and regulations," without conditioning the removal of an employee upon there being a rule violation. Accordingly, because the statute does not legitimately entitle S.B. to continued public employment, he does not have a protectable property interest sufficient to trigger constitutional procedural due process protections.

B.

S.B. also asserts that he has a protectable liberty interest that NJT infringed by charging him with stigmatic allegations without affording him a hearing to defend himself against the charges. Under federal law, reputational harm without more is not actionable as a deprivation of liberty. Paul v. Davis, 424 U.S. 693, 701-02 (1976). To establish an affected liberty interest under the

16

Fourteenth Amendment, S.B. must show a "stigma" to his reputation "plus deprivation of some additional right or interest." See Filgueiras v. Newark Pub. Schools, 426 N.J. Super. 449, 471-72 (App. Div. 2012) (quoting Hill v. Borough of Kutztown, 455 F.3d 225, 236 (3d Cir. 2006)). "In the public employment context, the 'stigma-plus' test has been applied to mean that when an employer 'creates and disseminates a false and defamatory impression about the employee in connection with his [or her] termination,' it deprives the employee of a protected liberty interest." Id. at 472 (quoting Hill, 455 F.3d at 236).

Under the New Jersey Constitution, the "analysis differs from that under the [United States] Constitution only to the extent that we find a protect[able] interest in reputation without requiring any other tangible loss." Doe v. Poritz, 142 N.J. 1, 104 (1995). Nonetheless, "a public employee who is defamed in the course of being terminated or constructively discharged satisfies the 'stigma-plus' test even if, as a matter of state law, [the employee] lacks a property interest in the job he [or she] lost." Hill, 455 F.3d at 238. There is no serious dispute that by alleging that he made sexually and racially offensive remarks on duty, NJT created a defamatory impression of S.B. "in the course of being terminated," ibid., even if, as NJT maintains, S.B. was discharged only because he was a probationary employee. S.B. therefore satisfied the "plus" prong, as

17

well as the creation and defamation elements. See Filgueiras, 426 N.J. Super. at 472. The remaining elements are falsity and dissemination.

With respect to falsity, S.B. maintains the statement in the charges that he "admitted to the . . . allegations during his interview" is false. We conclude that this affirmative statement of falsity, coupled with S.B.'s initial plea of not guilty to the charges, "raise an issue about the substantial accuracy of the report" in his employment file sufficient to satisfy the falsity prong. Cf. Codd v. Velger, 429 U.S. 624, 628 (1977).

As to the dissemination element, NJT argues that because there is no statutory "reporting requirement" with respect to the charges, as there was in Nicoletta, "or other automatic disqualifier to impair his ability to obtain future public employment," S.B. does not have an affected liberty interest. On the other hand, S.B. maintains he "will most certainly be foreclosed from any future law enforcement and/or public position" or "anywhere he may seek future employment" because his "employment history on file with" NJT currently "contains . . . charges of serious misconduct that impugns [his] integrity and his reputation," which he "was never given the ability to defend against."

Ordinarily, there must be "public disclosure by the public employer that could be said to have impaired [the public employee's] reputation, honor or

integrity." Battaglia v. Union Cty. Welfare Bd., 88 N.J. 48, 57 (1981). However, "[d]issemination to potential employers . . . is the precise conduct that gives rise to stigmatization," Valmonte v. Bane, 18 F.3d 992, 1000 (2d Cir. 1994), and several courts have held that "the public disclosure requirement has been satisfied where the stigmatizing charges are placed in the discharged employee's personnel file and are likely to be disclosed to prospective employers." See Brandt v. Bd. of Co-op. Educ. Servs., Third Supervisory Dist., Suffolk Cty., N.Y., 820 F.2d 41, 45 (2d Cir. 1987) (collecting cases); see also McGinnis v. D.C., 65 F. Supp. 3d 203, 222 (D.D.C. 2014) (holding that if a public employee's "personnel file is available to future employers, [he or] she has stated a reputation-plus claim").

In considering the severity of the stigma that would stain S.B.'s reputation if a prospective employer reviewed his employment file, the substantial likelihood that a future government employer may obtain S.B.'s employment file, and NJT's unilateral "elect[ion] not to pursue" the disciplinary proceedings to resolution, we conclude S.B. has an affected liberty interest sufficient to trigger constitutional protections.

A-2930-16T1

Having concluded that S.B. has a protected liberty interest, "the question remains what process is due." See Nicoletta, 77 N.J. at 165 (quoting Morrissey v. Brewer, 408 U.S. 471, 481 (1972)). Relying substantially on our decision in Dolan v. City of East Orange, 287 N.J. Super. 136 (App. Div. 1996), S.B. maintains he is entitled to a pre-discharge hearing, reinstatement of his job, and back-pay. In addition, S.B. argues that he was "unlawfully deprived of the right to invoke statutory defenses" against the underlying charges "conferred upon him via N.J.S.A. 27:25-15.1c and N.J.S.A. 40A:14-181." Further, S.B. claims he is entitled to discovery "to determine if the department's rules and regulations pertaining to the internal affairs investigation that was conducted of him were adhered to or violated."

In Dolan, "a provisional, at-will employee" was terminated from public employment after he was charged with "conduct unbecoming an employee" and a "hearing officer recommended that [the employee] be removed" for cause. 287 N.J. Super. at 139. The City accepted the hearing officer's recommendation and discharged Dolan. Ibid. After the City denied Dolan's request for a rehearing, he appealed to the Law Division, which granted his motion for summary judgment on claims that "his state and federal constitutional due process rights,

20

as well as his civil rights under 42 U.S.C. § 1983, had been violated . . . ." Id. at 140. The City appealed from that decision, and we affirmed "the summary judgment ordering a new hearing," but "reverse[d] and dismiss[ed] the § 1983 claim because, although Dolan was denied administrative due process as a matter of fundamental fairness, he did not suffer a constitutional deprivation which would support such a claim." Ibid.

Our decision recognized that Dolan had an affected liberty interest based on Civil Service regulations permitting denial of future employment when the employee "[h]as been removed from the public service for disciplinary reasons after an opportunity for a hearing," which we concluded entitled Dolan to "a hearing before removing him from his job for disciplinary reasons even if he is only a provisional, at-will employee." Id. at 143-44 (emphasis added) (quoting N.J.A.C. 4A:4-6.1 to -6.2). In that regard, we concluded that "from a constitutional perspective Dolan had a hearing that passed constitutional muster in the sense that he had an opportunity to be heard and was heard by the hearing officer" on the disciplinary charges for which he was terminated. Id. at 144. But, because the hearing officer based its determination that Dolan should be discharged for disciplinary reasons exclusively on hearsay, and "no residuum of legal and competent evidence appear[ed] in the record," we remanded for a new

21

pre-termination hearing on the disciplinary charges, not because "Dolan suffered a constitutional deprivation," but rather "as a matter of basic fairness and administrative due process." Id. at 144-45; see id. at 145 (recognizing "[a] public employee, even a provisional one, is entitled to a hearing that conforms to principles of 'basic' or 'fundamental fairness,'" to which Dolan's initial hearing failed to conform) (quoting In re Kallen, 92 N.J. 14, 26 (1983)).

S.B. has not advanced any argument that NJT's employment protocol is governed by Civil Service regulations. Cf. N.J.S.A. 27:25-15 (explaining NJT "may employ . . . such . . . officers and employees . . . as the corporation deems advisable; and may . . . discharge such officers and employees, all without regard to the provisions of Title 11 of the Revised Statutes," which were the then-existing Civil Service statutes). Further, in Dolan, "[w]e d[id] not consider the [government's] rights, if any, to terminate Dolan's employment for reasons other than those related to the disciplinary removal," because Dolan in fact was terminated for cause. Dolan, 287 N.J. Super. at 143 n.2. By contrast, here, there has been no official adjudication that S.B. committed the underlying allegations, and thus his employment file would not reveal that an independent decision-maker determined he was in fact terminated for cause. Instead, the charges against S.B. are unresolved and contain a statement, which S.B. maintains is

false, that he admitted to the underlying allegations. That is the nature of the liberty interest S.B. seeks to vindicate, as opposed to the actual determination of guilt wholly based on incompetent evidence that occurred in Dolan.

In assessing what process is due to protect S.B.'s liberty interest, case law suggests any deprivation of liberty must be preceded by a hearing. See, e.g., Roth, 408 U.S. at 571 n.7 (discussing "[t]he constitutional requirement of opportunity for some form of hearing before deprivation of a protected interest"); Carberry, 114 N.J. at 583-84 (finding the appellant "possessed a protect[able] interest in his continued employment" that "could be described as both a property interest" and "a liberty interest," then holding that "[t]hose interests require the [governmental employer] to proceed with due process before terminating [the public employee's] employment") (citations omitted). However, "[t]here are, of course, some situations in which a postdeprivation hearing will satisfy due process requirements." Loudermill, 470 U.S. at 542 n.7.

There are three competing interests to balance when deciding the process due a public employee subject to discharge: 1) the employee's interest in employment; 2) "the governmental interest in the expeditious removal of unsatisfactory employees and the avoidance of administrative burdens"; and 3) "the risk of an erroneous termination." Loudermill, 470 U.S. at 542-43 (citing

23

Mathews v. Eldridge, 424 U.S. 319, 335 (1976)).  After balancing these interests in the context of a tenured employee with an affected property interest, the Court in Loudermill found a "pretermination 'hearing[]'" was necessary.  Id. at 545.

In a context more analogous to S.B.'s situation, however, the Court held that "the hearing required where a nontenured employee has been stigmatized in the course of a decision to terminate his employment is solely 'to provide the person an opportunity to clear his [or her] name.'"  Codd, 429 U.S. at 627; see also Nicoletta, 77 N.J. at 168 ("for vindication of his constitutional 'liberty' right, Sergeant Nicoletta is only entitled, if he wishes it, to a post-termination hearing not so much for the limited purpose . . . 'to clear any damage to his reputation,' but rather to attempt to dislodge the specter of possible Civil Service debarment from further public employment" (quotation omitted)); Williams v. Civil Serv. Comm'n, 66 N.J. 152, 156-57 (1974) (holding a "provisional or temporary employee" was "entitled to a post-termination evidentiary hearing to clear any damage to his reputation" when his liberty interest was implicated in his discharge); Patterson v. City of Utica, 370 F.3d 322, 335 (2d Cir. 2004) (holding "[t]he appropriate remedy for a stigma-plus claim premised on a plaintiff's termination from at-will government employment is a post-deprivation name-clearing hearing").

A-2930-16T1

In considering the nature of S.B.'s liberty interest in obtaining future employment free from the stigmatic nature of the charges, NJT's interest in discharging probationary employees during their probationary periods without the burdens attendant to permanent employees' terminations, and the risk for error in NJT's decision-making, we conclude that pre-termination notice, an opportunity to respond, and a post-discharge hearing offers adequate procedural safeguards under these circumstances. At the post-discharge hearing, S.B. may invoke any applicable statutory defenses that he claims warrant dismissal of the underlying charges.[3]

Affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

---

[3] S.B. references our decision in O'Rourke v. City of Lambertville, 405 N.J. Super. 8 (App. Div. 2008), in which we held that "when a law enforcement agency adopts rules pursuant to N.J.S.A. 40A:14-181 to implement the Attorney General's Guidelines," the government's noncompliance with those rules warranted reversal of its decision to discharge the plaintiff. Id. at 23. The plaintiff in O'Rourke "could be removed for, among other things, neglect of duty, insubordination, or willful violation of the department's rules and regulations." Id. at 12. Aside from his purported lack of discovery and the conclusory statement that "public policy would appear to dictate that there be no exemptions for probationary officers," S.B. has not advanced any argument that O'Rourke applies to at-will employees, or that NJT in fact violated the Attorney General's Guidelines. The hearing officer can address these issues in the first instance on remand.

25                                                          A-2930-16T1